JOHN J. McEVOY, PLAINTIFF-RESPONDENT, v. MAYOR AND COUNCIL OF THE BOROUGH OF CLIFFSIDE PARK, *ET AL.*, DEFENDANTS-RESPONDENTS, AND JOHN GERRITY, *ET AL.*, INTERVENORS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1963—Decided April 2, 1963.

LEWIS, J. A. D., dissented.

Before Judges PRICE, SULLIVAN and LEWIS.

*Mr. Leon S. Wolk* argued the cause for intervenors-appellants (*Messrs. Basile, Delchop & Wolk,* attorneys).

*Miss Sylvia B. Pressler* argued the cause for plaintiff-respondent (*Messrs. Okin & Pressler,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. A. D.   Intervenors-appellants appeal from a ruling of the trial court which granted plaintiff's motion for summary judgment and declared null and void a resolution adopted by the mayor and council of the Borough of Cliffside Park (borough) purporting to involuntarily retire plaintiff as chief of police of said borough.   The ruling reinstated plaintiff as chief of police "with full tenure protection until he shall reach the age of seventy."   Ancillary to its ruling upholding plaintiff's status as chief of police, the trial court also nullified the consequential appointments in the borough's police department of intervenors-appellants as chief, captain, lieutenant, sergeant and patrolman, respectively.

Basically the question involved is whether or not plaintiff, having been retained in service by the governing body of the Borough of Cliffside Park after he became 65 years of age, may be involuntarily retired before he attains the age of 70.

The facts are undisputed.   Plaintiff was appointed a member of the police department of the borough in 1920 and was duly appointed chief of police in May 1955.   On October 19, 1960 plaintiff became 65 years of age.   Shortly prior thereto plaintiff attended a conference meeting of the borough mayor

and council, expressed a desire to continue in service, and was "granted an extension to serve as Chief of Police of the Borough of Cliffside Park, over and above the compulsory retirement age of sixty-five years." On October 20, 1960 the borough clerk sent the following letter to the Consolidated Police and Firemen's Pension Fund Commission.

"Consolidated Police & Firemen's
Pension Fund Commission
P. O. Box 1416
Trenton 25, New Jersey
 Re: John J. McEvoy
   Police Department
   Birthdate 10-19-1895
Gentlemen:
 The Mayor and Council wish me to advise you that Police Chief John J. McEvoy is to be retained in service by the governing body for an indefinite period.

          Very truly yours,
          NICHOLAS CASTRONUOVO
          Borough Clerk
NC/B"

Plaintiff continued in service as chief of police until December 3, 1961, at which time, by resolution adopted by the mayor and council, he was involuntarily retired "from said post, effective immediately," and granted accumulated sick leave of $6,461.20, to be paid weekly until said amount was exhausted.

The sick leave benefits were paid for 11 weeks and then discontinued. After considerable negotiations plaintiff formally demanded reinstatement, or payment of the balance of his sick leave. The council, however, did not take any action on the demand for reinstatement and refused to continue the sick leave payments on the ground that the part of the resolution authorizing them was illegal. The instant suit was then filed against the mayor and council seeking plaintiff's reinstatement, or in the alternative, payment to plaintiff of the sick leave benefits granted to him by the resolution of December 3, 1961. Thereafter intervenors-appellants were

permitted to intervene in the suit so that their rights and status might be adjudicated.

Cross-motions for summary judgment were made by plaintiff, defendants and intervenors respectively. Plaintiff's motion was supported by his affidavit setting forth his version of the events immediately preceding the retirement resolution of December 3, 1961, as follows:

"Mayor Calabrese arrived at my office at approximately 4:30 and advised me that at the meeting of the Mayor and Council to be held that evening a resolution would be introduced effecting my immediate 'retirement' from office. He told me that he was personally sorry that this step had to be taken but that he was forced to do it by political pressures within his own party. He advised me further, however, that my 'retirement' was being arranged in such a way that it would be accompanied by the granting to me of an accumulated 40 week sick leave allowance based upon my full weekly pay. I clearly stated to him that this 'retirement' was contrary to my wishes and without my consent."

These factual allegations were not disputed.

The affidavit of Mayor Calabrese submitted on intervenors' cross-motion stated that:

"Subsequent to the said John J. McEvoy having attained the compulsory retirement age of 65 years and in response to his indicated desire to remain in said office, permission was given for him to do so; however, it being the clearly understood intent that same could be terminated at the will of the Mayor and Council and in accordance with such intent a certain letter dated October 20, 1960 and signed by the then Borough Clerk, Nicholas Castronuovo, was sent to the Consolidated Police & Firemen's Pension Fund Commission."

Plaintiff's reply affidavit thereto asserted that "it was never my understanding, nor was it ever explained to me, that my continuance in office beyond the age of 65 could be terminated at any time at the will of the Mayor and Council."

As heretofore noted, the trial court granted plaintiff's motion, holding that plaintiff had full tenure protection until he reached the age of 70.

Plaintiff's basic position, which was adopted by the trial court, is that he cannot be involuntarily retired until the age

of 70 because of *N. J. S. A.* 40:47–6, the pertinent provisions of which follow:

"No person shall be removed from office or employment in any such police department * * * for political reasons, or for any other cause than incapacity, misconduct, nonresidence, or disobedience of rules and regulations established for the government of the police force and department."

Plaintiff concedes that his right to tenure under the above statute is modified by his membership in the Consolidated Police and Firemen's Pension Fund, established under *N. J. S. A.* 43:16–1 *et seq.*, and that he is bound by the compulsory retirement provisions of that act.

We need consider only *N. J. S. A.* 43:16–1 and *N. J. S. A.* 43:16–1.1. The first of these sections provides that an active member of a police department who has served honorably in such department for a period of 25 years, and has reached the age of 51 years "shall, on his own application, be retired." It further provides that an active member with 25 years of service and who has reached the age of 65, "shall be retired."

*N. J. S. A.* 43:16–1.1, first enacted in 1947, provides:

"Notwithstanding the provisions of section 43:16–1 of the Revised Statutes, any member who holds office, position, or employment as chief of a police department * * * may be retained in service by the governing body of the municipality, or by the director of public safety if the municipality has such a director, until such member attains the age of seventy years."

Plaintiff contends that this latter section must be construed *in pari materia* with the Tenure Act, *N. J. S. A.* 40:47–6, so that while plaintiff could have been retired at age 65 under *N. J. S. A.* 43:16–1, having been retained in service past that age under the provisions of *N. J. S. A.* 43:16–1.1, he cannot be involuntarily retired until he attains the age of 70.

The trial judge held that plaintiff, having been retained in service past the age of 65, "could not be removed from office without cause and under the Police Tenure Act as Chief of

Police of the municipality he was fully protected in that office until the end of his term which, after being continued after age 65, could not be terminated before he would attain age 70."

■■ We do not agree. Plaintiff was subject to retirement at age 65. We read *N. J. S. A.* 43 :16—1.1 to do no more than enable the municipality to retain plaintiff in service beyond plaintiff's sixty-fifth birthday, at the municipality's discretion or pleasure, but not beyond his attaining the age of 70 years. Section 1.1 merely suspends operation of the mandatory retirement provision of section 1 for such period of time as the municipality considers it advisable.

There are many reasons why a municipality may want to retain a police chief in service for a limited period of time past his normal retirement date. However, the advantages to be had by such retention would be nullified if any retention were held to confer tenure in office for an additional five years.

The provisions of the Police Tenure Act, *N. J. S. A.* 40 :47–6, dealing with removal from office or employment, are not applicable to the involuntary retirement of a police chief who is retained in service past the normal retirement age of 65, *i. e.*, the Tenure Act does not protect against involuntary retirement. Plaintiff could have been retained in service for a specified period of time, provided it did not extend beyond his seventieth birthday. The undisputed evidence, however, indicates that plaintiff's retention was for "an indefinite period." The borough, therefore, had the power to involuntarily retire plaintiff at any time.

Plaintiff argues that the phrase "for an indefinite period," as contained in the borough clerk's letter of October 20, 1960, has a special meaning in law. Plaintiff cites numerous cases holding that appointment for an indefinite period to a position of tenure means appointment until removal for cause. Suffice it to note that the cases referred to deal with original appointment to office rather than retention in service past normal retirement age.

The trial court, since it held that the involuntary retirement of plaintiff was null and void, found it unnecessary to rule on plaintiff's alternative demand for payment of sick leave benefits granted to him by the resolution of December 3, 1961. This issue must now be resolved at the trial level.

The judgment herein is reversed and the matter remanded to the trial court for entry of judgment upholding the involuntary retirement of plaintiff, reinstating the consequential appointments of intervenors-appellants to the offices enumerated, and adjudicating plaintiff's alternative demand for payment of sick leave benefits. No costs.

LEWIS, J. A. D. (dissenting). I find it necessary to respectfully disagree with the conclusion reached by my colleagues.

Plaintiff had been employed in the police department of the Borough of Cliffside Park for over 40 years, and for the last five years of that period was its chief of police. Upon his 65th birthday (October 19, 1960) he was eligible for compulsory retirement pursuant to the Consolidated Police and Firemen's Pension Fund Act, *N. J. S. A.* 43:16–1. However, by reason of his "employment as chief of a police department," the municipality had the option, under a 1947 amendatory act, *N. J. S. A.* 43:16–1.1, to extend the retirement "until such member attains the age of seventy years." Neither of said statutory enactments purports to alter or modify in any way the provisions of the Police Tenure Act, *N. J. S. A.* 40:47–6, except only to fix and determine the permissive and mandatory age requirements for retirement.

Our deliberations must consider those three acts of the Legislature *in pari materia* from the aspect of a comparison and interpretation of related provisions in their contextual setting of the declared legislative policy. They should be construed as a unitary whole so as to harmonize with and to give effectiveness to the intention of the lawmakers. "The reconciliation of apparently conflicting statutes to conform to the spirit of the legislation as a whole is a common exercise

of the judicial interpretive function." *Clifton v. Passaic County Board of Taxation*, 28 *N. J.* 411, 421 (1958). 2 *Sutherland Statutory Construction* (3rd ed. 1943), § 5201, *note*.

Whether the police chief was properly or improperly "removed from office" is an important issue in the pending litigation, but the more serious or grave proposition involved is the fractionization or nullification *pro tanto* of our tenure laws, the avowed purpose of which is to insulate public employees against considerations of politics, personal favoritism or partisanship in any form.

The governing body did not retire the chief when he had attained 65 years of age. His employment was continued, regular salary was paid to him, and the municipal clerk notified the Consolidated Police and Firemen's Pension Fund Commission that "he [McEvoy] is to be retained in service * * * for an indefinite period * * *," thereby further evidencing the borough's election to adopt the retirement age limit as prescribed in the 1947 amendment. A year and nearly two months later, on December 3, 1961, he was unilaterally and summarily removed from office. McEvoy, in his affidavit, referred to the events of that day in the following significant language quoted in the majority opinion:

"* * * Mayor Calabrese arrived at my office at approximately 4:30 and advised me that at the meeting of the Mayor and Council to be held that evening a resolution would be introduced effecting my immediate 'retirement' from office. *He told me that he was personally sorry that this step had to be taken but that he was forced to do it by political pressures within his own party.* He advised me further, however, that my 'retirement' was being arranged in such a way that it would be accompanied by the granting to me of an accumulated 40 week sick leave allowance based upon my full weekly pay. I clearly stated to him that this 'retirement' was contrary to my wishes and without my consent." (Emphasis supplied.)

Those factual allegations were not refuted. The sworn statement of ex-Mayor Calabrese was to the effect that it was not the intention of council to continue McEvoy "for a term of 5 years until his having reached the age of 70 years" and that,

accordingly, such continued employment was at the pleasure of the borough and terminable at will. On the other hand, plaintiff contends it had never been explained to him "that my continuance in office beyond the age of 65 could be terminated at any time at the will of the Mayor and Council." In any event, the provisions of *N. J. S. A.* 40:47-6 inhibit the removal of an officer or employee "for political reasons" and specifically encompass in their protective intendment one "who is permanently employed by the municipality at a fixed annual salary." Plaintiff's employment had been continuous from 1920 to December 3, 1961, and was at a fixed annual salary. Its permanency had never been interrupted and there is nothing in the record to indicate any engagement on a temporary basis or for a specified limited period. The record does not reveal any appointment or extension thereof other than "for an indefinite period." Such an employment under our decisional tenure cases is only terminable for cause. See *Moore v. Borough of Bradley Beach,* 87 *N. J. L.* 391 (*Sup. Ct.* 1915) ; *DeMarco v. Board of Chosen Freeholders, Bergen County,* 36 *N. J. Super.* 382, 384 (*Law Div.* 1955), affirmed 21 *N. J.* 136 (1956).

Notwithstanding and in disregard of the applicable basic laws of tenure and the 1947 amendment of the Police Pension Act, the borough council, on the aforesaid night of December 3, 1961, adopted a resolution which (1) acknowledged McEvoy's 42 years of services rendered "conscientiously and diligently," (2) recited the fact that he had been "granted an extension to serve as Chief of Police of the Borough of Cliffside Park, over and above the compulsory retirement age of sixty-five years," (3) retired him from his "post, effective immediately," and (4) provided for an accumulated sick leave benefit in the amount of $6,461.20, payable to McEvoy in weekly installments. In February 1962, however, the installment payments were discontinued.

Plaintiff and his attorney appeared at the municipal meeting on April 3, 1962. The minutes of that session reveal that the borough council refused to reinstate McEvoy as chief of

police. They also indicate an abrogation of any obligation to make further payments under the resolution of December 3, 1961, and a notation states that, "In casting their negative vote the Councilmen clarified their votes by saying they were advised that the resolution was illegal." We also observe Mayor Madden's comment that "the granting of the sick leave pay in the resolution was a cover up of an unpopular act."

Plaintiff's suit was commenced May 7, 1962, and cross-motions for summary judgment were heard by the trial court on July 12, 1962. All parties at that time urged that no genuine dispute as to any material fact existed. The issues of laches, estoppel and the applicability of R. R. 4:88-15(a) were neither pleaded (R. R. 4:8-3) nor raised on the trial level. In rendering summary judgment for the plaintiff, the trial judge found that the resolution of December 3, 1961, summarily retiring McEvoy as chief of police, was null and void. With that conclusion I agree.

It is not the function of the judiciary to augment legislation or to supply terms and conditions not adopted by the Legislature. *Dixon v. Gassert,* 26 *N. J.* 1, 9 (1958). We cannot impute to the lawmakers an intention to change the fundaments of an established tenure policy and to relegate chiefs of police between the ages of 65 and 70 to a non-tenure status unless the law so provides—clearly and unmistakenly. It is highly essential that law enforcement officers be protected to the fullest extent possible from partisan influence and pressures. For that obvious reason *N. J. S. A.* 40:47-6 specifically provides that no person shall be removed from office or employment "* * * in any such police department * * * for political reasons, * * *." Society demands freedom from the deleterious consequences which may ensue if the objectives of the Police Tenure Act are not faithfully pursued.

If the Legislature had intended to vest in a municipality a discretion other than an election to retire a member of the police force at the age of 65 under the general act (*N. J. S. A.*

43:16–1), or to adhere to the provisions of the 1947 amendment (*N. J. S. A.* 43:16–1.1) applicable to police chiefs, and thereby adopt the alternate mandatory retirement age of 70, it could have employed adequate and appropriate language to clearly manifest that intention. Moreover, any such discretion beyond the exercise of such a choice would necessitate suitable guiding standards. See and compare, for example, *N. J. S. A.* 43:10–18.26, applicable to certain members of the Employees' Retirement System (*Harvey v. Essex County Board of Freeholders,* 30 *N. J.* 381 (1959)), and *R. S.* 18:13–50 and 18:13–53 (subsequently repealed, *L.* 1955, *c.* 37) relating to the Teachers' Superannuation Retirement Act (*Bd. Education, Beach Haven v. State Bd. Education,* 115 *N. J. L.* 364 (*Sup. Ct.* 1935)). Note also *N. J. S. A.* 18:13–112.45.

The majority opinion stated:

"There are many reasons why a municipality may want to retain a police chief in service for a limited period of time past his normal retirement date. However, the advantages to be had by such retention would be nullified if any retention were held to confer tenure in office for an additional five years."

It seems clear to me that such a conclusion is a *non sequitur.* It is within the province of a municipality to retire a chief of police under *N. J. S. A.* 43:16–1 when he attains the age of 65 and thereafter, if it be deemed necessary or advisable, to re-employ him on a temporary basis for any specific purpose or stated time mutually agreed upon within the limits of the statute. This, however, was not done in the instant case, as McEvoy was not retired nor his official position terminated when he reached the age of 65. To interpret *N. J. S. A.* 43:16–1.1 to mean that the continuation of a police chief in office after age 65 and before 70 is to be at the unfettered will and sufferance of the governing body would effectively nullify, for such a period of time, the established policy of our State as reflected in a constant course of tenure legislation. Indeed, for such a period, albeit only five years, we would hark back

to the "system" of spoils that so extensively prevailed before 1885. See generally, *Van Riper, History of the United States Civil Service, p.* 44 (1958). The municipality owed McEvoy, at the very least, an honest, straightforward decision and the opportunity to be heard on any protest.

To reverse the trial judge and remand the case for an adjudication of plaintiff's demand for payment of benefits under an alleged illegal and *ultra vires* resolution, already negated by the borough council, would afford little consolation to the plaintiff and would sanction municipal action which I perceive to be unlawful. Accordingly, I vote to affirm the judgment of the trial court.