83 N.J. Super. 268 (1964)
199 A.2d 397
JOHN J. McEVOY, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF CLIFFSIDE PARK, AND LOUIS S. KORB, BOROUGH AUDITOR OF THE BOROUGH OF CLIFFSIDE PARK, DEFENDANTS; JOHN GERRITY, FRANK LINARDI, EDWARD FLIPOWICZ, LOUIS ALFANO AND JOSEPH CICCONE, INTERVENERS.
Superior Court of New Jersey, Law Division.
Motion Heard March 6, 1964.
Decided April 13, 1964.
*269 Mrs. Sylvia B. Pressler for plaintiff (Messrs. Okin & Pressler, attorneys).
Mr. Joseph C. Woodcock, Jr. for defendant.
SCHNEIDER, J.C.C. (temporarily assigned).
Plaintiff was the Chief of Police of Cliffside Park, Bergen County, New Jersey. The facts are set forth in McEvoy v. Mayor and Council of Cliffside Park, 78 N.J. Super. 534 (App. Div. 1963), affirmed 40 N.J. 600 (1963). The Appellate Division reversed a ruling of the trial judge which set aside a resolution retiring the chief of police and the matter is closed as to this phase of the case.
*270 The original resolution retiring the chief of police granted accumulated sick leave of $6,461.20 to be paid weekly until said amount was exhausted. As set forth in the Appellate Court opinion, the sick leave benefits were paid for 11 weeks and then discontinued. The council refused to continue sick leave payments on the ground that part of the resolution which authorized them was illegal. In his complaint plaintiff sought reinstatement to his position or, in the alternative, payment of the sick leave benefits granted to him by the resolution of December 3, 1961.
The interveners were other policemen whose rights were affected. They are not necessary to this part of the case.
The decision of the Appellate Division, sustained by the Supreme Court, discussed only the question of the right of plaintiff to stay in office. The matter of sick leave was remanded to the trial court to adjudicate plaintiff's alternative demand for payment of sick leave benefits. Motion was made for summary judgment, and there being no dispute as to the facts, final decision was referred to this court.
Cliffside Park has never adopted the provisions of Civil Service and we must look entirely to the borough for our situation. The resolution of December 3, 1961 states in part:
"Whereas the borough of Cliffside Park desires to grant to the said John J. McEvoy an accumulated sick leave amounting to $6,461.20, which the borough of Cliffside Park recognizes as the vested right of said John J. McEvoy to accumulated sick leave, to be paid weekly until said amount is exhausted.
Now, therefore, be it resolved by the Mayor and Council of the Borough of Cliffside Park as follows:

* * * * * * * *
2. That the Mayor and Council grant to the said John J. McEvoy, an accumulated sick leave amounting to $6,461.20, which the Borough of Cliffside Park recognizes as the vested right of the said John J. McEvoy to accumulated sick leave, to be paid weekly until the said amount is exhausted.
3. That the Mayor, Borough Clerk, Tax Collector and other necessary officials of the Borough of Cliffside Park, be and they are hereby authorized, empowered and directed to execute any and all documents necessary to effectuate the aforesaid accumulated sick leave payment."
*271 The only ordinance of the municipality is chapter 15, section 13 (as set forth in agreed stipulation of facts), which provides:
"Except with the written approval of the Chairman of the Public Safety Committee of the Mayor and Council, not more than 14 days leave of absence with full pay shall be granted any officer or member of the police department on account of sickness or for any other cause in any calendar year. The Mayor and Council shall have the power to countermand the written approval of the Chairman of the Public Safety Committee."
In the stipulation of facts, agreed to by both counsel, it is stated:
"9. The defendants granting to plaintiff of a forty week accumulated sick leave benefit may be equally construable as the defendants' intention to grant a terminal leave of absence."
The former chief served 41 years and never took more than one week of allowable sick leave in any one year. Regulation 14 of the Cliffside Park Police Department regulations provides for two weeks of leave of absence of sickness or other cause in any calendar year, without written approval of the governing body.
The balance claimed is $4,684.37. No appropriations were ever made in the budgets for payment of sick leave benefits.
Defendants claim that the resolution authorizing and directing payment for accumulated sick leave was an invalid and ultra vires act.
Under Civil Service law, N.J.S.A. 11:24A-3, sick leave may be accumulated over more than the current year, but it requires actual sickness to permit use of the accumulated time. Yet we find that many employees are given pay for sick leave after expiration of their work.
It is true that the ordinances of the borough do not specifically set forth that sick leave may be accumulated or that payment be made for such accumulation. If an application were made by the police chief for payment for accumulated sick *272 leave, it would appear that there would be insufficient authority in the borough laws to permit such payment.
We have a different situation here. After 41 years of service, the municipal governing body passes a resolution to provide money to a faithful employee. It is called "sick leave" and recognizes the vested right to accumulate. Payment is made for some months and then discontinued by a subsequent governing body.
Counsel, in their stipulation of facts, concede that this action could be construed as a terminal leave of absence. The ordinance provision, inserted in a codification from an existing resolution permits leave of absence with full pay on account of sickness or any other cause (italics added) and the 14 days in a year may be extended by approval of the chairman of public safety with the veto power in the mayor and council. The payment here is for less than seven days a year.
What the governing body did in this case has been done in many municipalities as reward for faithful service and has received legal sanction.
The court believes there is express power to grant it. In any event, there is certainly implied power.
"* * * The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or bylaw." (Constitution 1947, Art. 4, sec. VII, par. 11).
The governing body is granted authority to create a police department and to provide compensation for the persons appointed. R.S. 40:47-1. It has discretionary power to determine amounts of payment. An ordinance of the borough permits the payment for leaves of absence for any reason. Are we to narrow the construction of the express and implied power to a statement that the ordinance does not specifically state that "sick leave" may be accumulated? I do not think so.
*273 In Roberts v. City of Orange, 102 N.J.L. 721 (E. & A. 1926), a municipal resolution granting 60 days' pay to policemen for each of two years of protracted illness was approved by the Court; in Sganga v. Teaneck Township, 130 N.J.L. 218 (Sup. Ct. 1943) there was approved a municipal resolution granting half pay to policemen during year's leave of absence for illness.
The fact that no provision was made in the budget does not defeat the validity. 4 McQuillin, Municipal Corporations (3d ed.), § 12.174, p. 6.
For the reasons set forth judgment will be entered on submission of form of judgment in the amount of $4,684.37.