183 N.J. Super. 29 (1982)
443 A.2d 222
CAROLLEE C. BAKER, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY DEPARTMENT OF LABOR AND INDUSTRY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 5, 1982.
Decided February 2, 1982.
*31 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Epstein & Libretti, attorneys for appellant (John P. Libretti on the brief).
James R. Zazzali, Attorney General of New Jersey, attorney for respondent (Michael S. Bokar, Deputy Attorney General, of counsel; Michael J. Haas, Deputy Attorney General, on the brief).
The opinion of the court was delivered by McELROY, J.A.D.
This appeal involves interpretation of N.J.S.A. 43:21-41(c) which prescribes the requirements of entitlement for temporary disability benefits. Appellant appeals from a decision by the Board of Review of the Department of Labor and Industry *32 (Board) which denied her such benefits because, in the Board's view of the matter, she had not earned $2,200 or more during the 52 calendar weeks preceding her first week of pregnancy disability. We disagree and reverse.
The controlling facts are not in dispute. Petitioner-appellant was employed by the State of New Jersey as a teacher at the Hunterdon State School in Clinton from December 1978. On March 26, 1980 the State of New Jersey became a covered employer subject to the temporary disability law. N.J.S.A. 43:21-27(a)(1). Thus, for purposes of computing earnings of appellant, the relevant period of time is from March 26, 1980 to May 16, 1980, the last work day of the week preceding May 23, 1980, the date when she was granted maternity leave. This time span becomes important because N.J.S.A. 43:21-41(c) requires that a covered employee has no entitlement to disability benefits unless "he has established at least 17 base weeks within the 52 calendar weeks preceding the week in which his period of disability commenced or, in the alternative has earned $2200.00 or more within the 52 calendar weeks preceding the week in which his period of disability commenced...." (Emphasis supplied).
Appellant did not qualify as an employee with 17 base weeks during the brief controlling period and to be eligible for benefits had to demonstrate she "earned" $2,200 or more during that time. It is agreed that appellant's daily rate of pay was $53.18. In the period from March 26, 1980 to May 16, 1980 she earned $2,015.50 in base salary, and unless she established that she "earned" an additional $184.50 in the same period, she was ineligible for disability benefits. Appellant contended that in the period in question she "earned," in the sense of contractual entitlement, the right to vacation days, sick days and administrative or personal days and that these days, calculated at her daily rate of $53.18, are sufficient to demonstrate earnings in excess of $2,200.
*33 Appellant's employer treated all of these contractually accrued days as "earned," and subsequent to her last work day paid her for the vacation and sick days accrued up to the time of her grant of leave as well as for administrative or personal days due her under her employment contract. It appears, moreover, that her employer's personnel director, on the last day appellant worked, gave her a "stub" demonstrating that in the crucial period she had earned in excess of $2,200.
The Board took a different view, holding that because the vacation days were paid after appellant left work, and in the period for which she sought benefits, the vacation days could not be calculated as part of the necessary $2,200 figure. The Board recognized that appellant had available to her 1 1/2 days of administrative or personal days but refused to calculate those days (amounting to $79.77) because they were granted to her at the beginning of the work year "without any mention of it being earned in the future," and refused to consider such days as earned in the period in question. These days, like the vacation days, were regarded by the Board "as remuneration subsequent to May 23, 1980." The Board recognized that appellant was contractually entitled to 15 sick days a year. It reasoned that sick days were credited at the beginning of the year "in anticipation of working the full twelve months." The Board calculated that appellant thus "earned 1 1/4 days sick leave each month"; that she had "earned 2 1/2 sick leave days" in the period in question which, at her daily rate of $53.18, totaled $132.95, but refused to credit her with that sum because when added to her base of $2,015.50 she still fell short of the required $2,200.
The main thrust of the Board's position on this appeal as to the vacation days and sick days contractually available to appellant is that these items appellant seeks to claim as "earned" before May 16, 1980 were not "due" her until she requested them upon leaving employment and therefore "the payments received by appellant during her maternity leave constituted *34 "wages for the weeks in which they were paid and not for the weeks during which the leave accrued."
The Temporary Disability Benefits Law is remedial legislation and requires that it be liberally construed to effect its declared purposes. N.J.S.A. 43:21-26. We find no justification for the Board's view in the controlling statute. N.J.S.A. 43:21-41(c) only requires that an employee have "earned $2200 or more." (Emphasis supplied). It does not require all of that which has been earned be paid to the employee during the necessary period. The applicable rule of statutory construction is that "in the absence of any explicit indication of special meaning, words of a statute are to be given their ordinary and well understood meaning." Levin v. Parsippany-Troy Hills Tp., 82 N.J. 174, 182 (1980); Fahey v. Jersey City, 52 N.J. 103, 107 (1968). Appellant had unquestionably earned, as the Board recognized, 1 1/4 sick days for each month worked between March 26, 1980 and May 16, 1980. Likewise, because she was contractually entitled to 12 vacation days a year, she earned one day for each month worked. The observation made in Botany Mills, Inc. v. Textile Workers Union, etc., 50 N.J. Super. 18 (App.Div. 1958) has application here:
Vacation pay, as well as severance pay, has often been said to be in the nature of deferred compensation, in lieu of wages, earned in part each week the employee works, and payable at some later time. Owens v. Press Publishing Co., 20 N.J. 537, 547 (1956); In re Wil-low Cafeterias, 111 F.2d 429, 432 (2 Cir.1940); Goodall-Sanford, Inc. v. United Textile Workers, [1 Cir., 233 F.2d 104] supra; In re Poloker, [286 App.Div. 733, 146 N.Y.S.2d 616] supra; Div. of Labor Law Enforcement v. Ryan Aeronautical Co., 106 Cal. App.2d Supp. 833, 236 P.2d 236, 30 A.L.R.2d 347 (Super.Ct., App.Dept. 1951); In re National Casket Co., 17 Lab.Arb. 570 (1951); In re A.D. Julliard Co., 18 Lab.Arb. 896 (1952). In the case of vacation pay, that future date is usually fixed; with severance pay it is dependent on termination of employment. In this sense such benefits "accrue" during the work year, not merely on the date when they become payable. Thus understood, the rights to vacation pay substantially accrued during the life of the agreement. [at 30; emphasis supplied].
We hold that appellant contractually, and in the statutory sense, earned the monetary value of vacation days and sick leave days in the period between March 26, 1980 and May 16, 1980. It *35 next remains to compute the number of such days and their total dollar value at appellant's daily rate of $53.18.
By reason of that which follows, we need not determine whether appellant's entitlement to administrative or personal days may properly be used to calculate her eligibility for benefits. Appellant worked 37 days in the period from March 26, 1980 to May 16, 1980. On a five-day week basis she would ordinarily work 260 days a year. The days worked in the controlling period constitute 14% of the usual work year. She was entitled to 12 vacation days a year, and 14% of those 12 days amounts to 1.6 days at $53.18, or $85.08 earned. Her employer allowed 15 sick days a year, and 14% of that number is 2.1 days, or $111.68 earned. The total of these figures is $196.76, which, when added to her base salary of $2,015.50, gives her an earned amount of $2,212.26 during the controlling period. Appellant is thus entitled to benefits she claims.
There is, however, a necessary limitation upon the right appellant asserts. The declared purpose of the act is that "[i]t is ... desirable and necessary to fill the gap in existing provisions for protection against the loss of earnings caused by involuntary unemployment, by extending such protection to meet the hazard of earnings loss due to inability to work caused by non-occupational sickness or accident." N.J.S.A. 43:21-26. Thus, to the extent appellant, after taking maternity leave, received remuneration in the form of sick days, vacation days and personal days, the statutory purposes clearly are not served by giving her disability benefits for those days as well. The award of benefits must be adjusted to recognize this statutory intent. Cf. Bogda v. Chevrolet-Bloomfield Div., G.M. Corp., 8 N.J. Super. 172, 182-183 (App.Div. 1950).
The decision rendered by the Board is vacated. The matter is remanded for further proceedings in conformity with this opinion.