711 A.2d 391

KAREN PALITTO, PETITIONER–APPELLANT, v. BOARD
OF REVIEW, DEPARTMENT OF LABOR,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 19, 1998—Decided June 8, 1998.

Before Judges PRESSLER, CONLEY and CARCHMAN.

*John J. Palitto Jr.*, attorney for appellant.

*Peter Verniero*, Attorney General, attorney for respondent (*Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Ellen A. Reichart*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Claimant Karen Palitto appeals from a determination of the Appeal Tribunal, affirmed by the Board of Review, denying her application for disability benefits on the ground that since she was employed by her husband, her employment did not qualify for those benefits. We conclude that the agencies failed to give adequate consideration to the import and purpose, as well as the text, of the applicable statutes and, accordingly, we reverse and remand for further proceedings.

The facts are simple and uncontested. John J. Palitto Jr. is the owner of an insurance agency, the Palitto Agency, which he operates as a sole proprietorship. Claimant started to work for him in 1981 as a secretarial and clerical employee on a part-time basis. She began full-time employment with the agency as its office manager in 1986 or 1987 and continued in that employment until the end of 1995 when she left because of disability, namely, both Crohn's disease and ankylosing spondylitis. There is apparently no dispute as to the nature and extent of the disability. Claimant and John J. Palitto Jr. were married in 1994. The marriage had no effect on the employer-employee relationship. That is, claimant continued to receive her salary, the agency continued to pay all required federal and state payroll taxes, and claimant made all required federal and state contributions.

The sole ground for the agency determination that claimant was not entitled to disability benefits was its legal conclusion that employment by a spouse is automatically exempt from benefits. We disagree. To begin with, we recognize that the Temporary Disability Benefits Law, *N.J.S.A.* 43:21–25 to –31, incorporates the definition of "covered individual" prescribed by the Unemployment Compensation Law, *N.J.S.A.* 43:21–1 to –24.25. *See*

*N.J.S.A.* 43:21–27(b). We also recognize that *N.J.S.A.* 43:21–19(i), governing the definition of "covered individual" under the Unemployment Compensation Law, lists a variety of services that are deemed not to constitute employment for the purposes of entitlement to benefits. Relevant here is *N.J.S.A.* 43:21–19(i)(7)(C) which excludes "[s]ervice performed by an individual in the employ of his son, daughter or spouse, and service performed by a child under the age of 18 in the employ of his father or mother." The Appeal Tribunal and Board of Review construed that exclusion as absolute and unconditional. It is neither.

To begin with, what the agencies did in their construction of subsection (C) was to completely disregard the qualifying language of *N.J.S.A.* 43:21–19(i)(7) which introduces and limits the apparent family exclusion. The dictate of 19(i)(7) is to exclude the stipulated familial services only if they "are also exempt under the Federal Unemployment Tax Act, as amended, or . . . [if] contributions with respect to such services are not required to be paid into a state unemployment fund as a condition for a tax offset credit against the tax imposed by the Federal Unemployment Tax Act, as amended. . . ." Claimant, as the office manager of the business and the person in charge of payroll, testified that federal unemployment taxes were paid by her employer on her salary after the marriage as well as before.

As to the first alternative stated by the above-quoted introductory language, we appreciate that the employer's payment under the Federal Unemployment Tax Act (FUTA) is not necessarily dispositive. The question, rather, is whether the services are exempt under FUTA. Moreover, it does appear that under FUTA, spousal services are exempt. *See* 26 *U.S.C.A.* § 3306(c)(5), excluding "service performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of 21 in the employ of his father or mother." Nevertheless, the FUTA exemption is, in our view, not dispositive either. First, there is nothing in this record to permit us to determine whether the second alternative in the disjunctive formulation of

*N.J.S.A.* 43:21–19(i)(7) is applicable. Were contributions with respect to claimant's services "required to be paid into a state unemployment fund as a condition for the specified tax offset?" There is no way for us to know that at this juncture.

More significantly, however, even if the spousal services were exempt, that is not the end of the matter. *N.J.S.A.* 43:21–8(c)(2) expressly provides that an "employing unit for which services are performed that do not constitute employment" as defined by the act may nevertheless and unilaterally effectuate coverage of those services for all purposes under the act by filing a written election in that tenor with the Division of Employment Security. We do not know from this record whether the Palitto Agency ever filed such a written election. Nor do we regard its failure to have done so, if that should be the case, as fatal to claimant's application. We opt to follow the lead of the Supreme Court of Ohio, which had before it a virtually identical problem in *Dixon v. Dixon,* 4 *Ohio St.*3d 160, 447 *N.E.*2d 756 (1983), involving virtually identical statutory provisions. There, a mother had worked for her son until he sold the business and her employment was terminated. During the period of her employment, as here, all required federal and state employment taxes were paid by both. The son had, however, failed to file the statutorily required written election. The court reasoned as follows:

> In this case, the employer paid the required contributions for the years in which appellant was employed at the carry-out. It is undisputed that appellant worked long hours, six days a week. However, appellant was denied benefits due to her employer's failure to file a form with the state. Even though contributions were paid into the state fund, appellant was denied benefits through no fault of her own.
>
> The result is that the state has been unjustly enriched by receiving the contributions and denying compensation to appellant. Allowing the state to benefit at the expense of appellant is against the fundamental principles of fairness and equity.
>
> In considering this situation, we are mindful that the purpose of the Ohio Unemployment Compensation Act is to "provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault of his own." *Salzl v. Gibson Greeting Cards* (1980), 61 *Ohio St.*2d 35, 39, 399 *N.E.*2d 76 [15 *O.O.*3d 49]. According to this statement, the system was designed to aid an individual in appellant's circumstances. Furthermore, R.C. 4141.46 states that the Act is to be liberally construed and appellant

deserves a right to have her claim determined on its merits pursuant to R.C.
4141.26.

We agree with Presiding Judge Grey's dissent in the court below that justice requires that this case be reversed and remanded for a determination on the effect of the employer's failure to file the election under R.C. 4141.01(A)(5) [the counterpart of *N.J.S.A.* 43:21–8(b)(2) ].

[447 *N.E.*2d at 757–758.]    [Footnotes omitted.]

New Jersey, like Ohio, recognizes the beneficient and salutary purpose of the social legislation affording benefits to employees whose employment is lost through no fault of their own and also requires liberal construction of that legislation. *See, e.g., Baker v. Dep't of Labor & Industry,* 183 *N.J.Super.* 29, 34, 443 A.2d 222 (App.Div.1982). And see the statement of legislative purpose embodied in *N.J.S.A.* 43:21–26.

The question then, as we see it, is the effect of the employer's failure to file the written election pursuant to statute when all the payments that would have been required by the election have actually been made. Since this is an issue of first impression, we regard it appropriate, as did the Ohio Supreme Court, for the agency whose responsibility it is to administer and implement the statute, to make the first determination and to marshall and evaluate the relevant facts. In addressing that question, the agency should give consideration to the fact that the filing of the written election is purely unilateral, does not require the permission or approval of the Division, and is apparently entirely self-effectuating and self-executing. Thus, if the employer had done, by way of payment and reporting, everything that he would have been required to do had he filed the written election, the act of filing may well be regarded as a purely ministerial act whose omission would not defeat the election. Moreover, the payment and reporting may be deemed to be substantial compliance with the written-election opportunity. We hesitate to speculate further since the full facts are not before us. Nevertheless, we admonish the agency, on its consideration, to be mindful of the beneficient purpose of the legislation and the fairness and justice with which the facts here must be addressed in the context of the applicable statutory provisions.

We reverse and remand for further proceedings consistent with this opinion.