675 A.2d 655

IN THE MATTER OF RICHARD T. FLEMING AND JOHN R. HERO, HOLDER OF PRCL. NO. 1215-33-015-003 ISSUED BY THE TOWNSHIP OF NORTH BRUNSWICK (MIDDLESEX COUNTY).

Superior Court of New Jersey
Appellate Division

Argued October 11, 1995—Decided May 7, 1996.

---

2 Now ten years, under *N.J.S.A.* 39:4–50(a).

————————

Before Judges DREIER and KESTIN.

*George F. Hendricks,* for appellants Richard T. Fleming and John R. Hero (*Hendricks & Hendricks,* attorneys; *Mr. Hendricks,* of counsel; *Patricia M. Love,* on the brief).

*David N. Bregenzer, Jr.,* Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (*Deborah T. Poritz,* Attorney General, attorney; *Mr. Bregenzer,* on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Petitioners appeal from a decision of the Director of the Division of Alcoholic Beverage Control denying them further authorization to apply for renewal of their Class C liquor license after several extensions had been granted beyond the two-year period of inactivity established by law. *N.J.S.A.* 33:1–12.39. We affirm.

The license, issued by the Township of North Brunswick, has been inactive since November 25, 1985, when a prior licensee sold the building in which the license had been used. Petitioners are real estate brokers who had initially listed the license for sale before purchasing it themselves, in its inactive state, on March 9, 1988, for a price of $105,000. One of the petitioners testified that they had intended to use the license in their own establishment, a plan that was abandoned when construction of the shopping center in which the business was to be located was delayed and general economic conditions adversely affected financing. Petitioners then began to market the license actively.

Because the license had already been inactive for the two-year statutory period when petitioners purchased it, they were required immediately to petition the Director for permission to apply for renewal of the inactive license. They did so, and were granted such authorization for the 1988–89 license term. Subsequent authorizations were also granted for the 1989–90 and 1990–91 license terms.

After receiving a fourth application for authorization, for the 1991–92 license term, the Director, "directly and individually", *N.J.S.A.* 52:14F–8b, held a hearing on the matter on June 11, 1991. A March 10, 1992 ruling granted the application with a special condition to be placed on the license renewal that "no further renewals of the license shall be granted unless the license is being actively used at an approved site on or before June 30, 1992." Notwithstanding this condition, petitioners submitted yet another petition for the 1992–93 license term. This application was referred to the Office of Administrative Law for a hearing as a contested case pursuant to the Administrative Procedure Act, *N.J.S.A.* 52:14B–10(c). Because the end of the 1992–93 license term was approaching as closure of the hearing record neared, petitioners and the Division agreed that the administrative law judge could also consider whether authorization should be granted for the 1993–94 license term as well.

In his initial decision, the administrative law judge made findings on the basis of which he concluded that activation of the license by the end of the 1993–94 license term was reasonably to be anticipated. He held that petitioners had, therefore, demonstrated good cause for further renewal authorizations for both the 1992–93 and 1993–94 license terms, but that no further authorization for renewal beyond those terms should be granted.

The Director in his final agency decision, dated September 20, 1993, rejected the conclusions reached by the administrative law judge, *N.J.S.A.* 52:14B–10(c) and (d), while accepting the "basic factual findings." The Director specifically rejected the conclusion that activation of the license by the end of the 1993–94 license term was likely. He saw as lacking adequate evidential support in the circumstances, the finding upon which this conclusion was based, *i.e.*, that petitioners had "entered into a contract for the sale of the liquor license with a purchaser who has a reasonable expectation of opening its premises within the 1993–94 license term [and that petitioners had thus] established a set of circumstances leading toward activation which are substantial and not speculative." The Director saw the record, instead, to establish more significantly that while there was a contract of sale for $135,000,

" ... the sale [was not to] take place ... [until the buyer obtained] all approvals necessary to open and operate a restaurant in a mall *to be constructed* ...." Additionally, [petitioner] advises that "[t]he contract is also contingent upon the developer obtaining all approvals for its applications which are pertinent to the buyer's ownership and operation of the restaurant."

\* \* \*

The shopping mall not only has not yet been built, construction has not even commenced as of this date. Additionally, the landlord is still searching for an "anchor tenant;" furthermore the [T]ownship is limiting access only from Route 1 and, since the developer " ... would like to have access from North Oaks Boulevard as well, ... it is negotiating for that approval with the [T]ownship and the Department of Transportation." The contract purchaser of this license states that "*he thinks*" that the anchor tenant will be found by the landlord in just a few months. "Ground *then* will be broken for the shopping center...." Moreover, he opines that "[o]nce construction begins, the shopping center will be completed in six to eight months." Significantly, however, he advises that " ... he is negotiating

with second choice locations for the liquor license in case an anchor tenant is not found and the shopping center is not built." [Citations to record omitted.]

The Director concluded that the opportunity for actual sale and use of the license was essentially speculative and that petitioners had failed to establish good cause for further renewal authorizations, especially in the light of the limiting condition embodied in the last authorization they had received. The Director noted specifically, in this regard, the Division's long-established standard that good cause for license renewal authorization was "usually evidenced by steps taken to *activate* the license, rather than demonstrating 'a good faith effort to sell' it."

The Director, accordingly, determined that petitioners had not satisfied the explicit requirement to activate the license by June 30, 1992, and that there was no reasonable expectation they would do so by June 30, 1994. The petition was denied and a notice of appeal was filed on November 4, 1993.

Subsequently, petitioners entered into a different contract for the sale of the liquor license for $65,000, on the basis of which they moved, on November 24, 1993, before the Director for reconsideration of the final decision. The new contract was represented to provide for a "place to place transfer" of the liquor license to an already existing Roy Rogers restaurant in the municipality, subject only to local approval, with a "prognosis for activation [that was] no longer 'speculative' but rather ... near definite." After submission of supplemental affidavits, the motion for reconsideration was denied on March 10, 1994.

■ From the time of their very first application for renewal approval, petitioners have been explicitly and emphatically on notice of the statutory and regulatory policies governing such matters. Director Vassallo, in his June 28, 1988 ruling for the 1988–89 licensing term, noted

[A]ny additional applications for renewal of this license in its inactive state pursuant to *N.J.S.A.* 33:1–12.39 will require substantial proof and clear and convincing evidence including but not limited to the transfer to a party who will activate the license to establish good cause.

Furthermore, I note that the Township Committee of the Township of North Brunswick which has a population of 22,220 has issued 19 Plenary Retail Consumption Licenses. In contrast, I note that *N.J.S.A.* 33:1–12.14 limits the number of Plenary Retail Consumption Licenses to a ratio of 1 license per 3000 of population. Therefore, the number of Plenary Retail Consumption Licenses issued in the Township of North Brunswick exceeds the statutory ratio by 171%.

This ratio has been established to insure that the population of the municipality is sufficient to support each license issued. When a municipality exceeds this ratio, a presumption exists that the municipality cannot support the number of existing licenses. Therefore, should the licensee submit a petition for a Special Ruling for the 1989–90 license term, this factor will be seriously considered.

In the approval pursuant to the fourth application, Director Costa imposed the limitation on further applications to which we have referred.

We have reviewed the record in the light of petitioners' arguments that the Director's decision on the fifth and sixth applications was arbitrary, capricious and unreasonable, and against the weight of the credible evidence; and that the Director unreasonably denied petitioners' motion for reconsideration. We hold that, because there was ample basis in the evidence for the conclusions reached by the Director, they are entitled to deference. *Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 92–93, 312 *A.*2d 497 (1973); *Close v. Kordulak Bros.,* 44 *N.J.* 589, 598–99, 210 *A.*2d 753 (1965). That the ultimate findings and the conclusions of the Director differed from those of the administrative law judge is of no consequence where there was adequate evidential support for the findings and conclusions reached in the final decision, *De Vitis v. New Jersey Racing Comm'n,* 202 *N.J.Super.* 484, 489–93, 495 *A.*2d 457 (App.Div.), *certif. denied,* 102 *N.J.* 337, 508 *A.*2d 213 (1985), especially where credibility was not a substantial factor, *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 587–88, 538 *A.*2d 794 (1988).

We are bound also to defer to the agency's expertise and discretion in administering a subject matter area committed to its supervision. In the absence of constitutional considerations, which are not before us in this case, it is not our place to second-guess the public policy of the State as declared in statutes, and in

regulations and administrative decisions promulgated pursuant thereto, *see Canavera v. Township of Edison*, 271 *N.J.Super.* 125, 129, 638 *A.*2d 160 (App.Div.1994); *cf. Texter v. Human Services Dep't*, 88 *N.J.* 376, 385, 443 *A.*2d 178 (1982), especially in so highly sensitive an area as alcoholic beverage control, *Butler Oak Tavern v. Division of Alcoholic Beverage Control*, 20 *N.J.* 373, 383–85, 120 *A.*2d 24 (1956). We see no basis for concluding that the Legislature's choice to establish liquor license ratios does not serve valid policy objectives, or that one of the means for achieving those ratios, by retirement of inactive licenses, is impermissible. Further, we discern nothing arbitrary in the procedures employed herein or in the determination reached, where petitioners' need for forbearance in respect of their inactive license had been met with flexibility and understanding through a series of changing scenarios, until a conclusion was reached that there was no substantial likelihood that petitioners would meet with success in their efforts within a reasonable time. Although, functioning as finders of fact, we might have reached a different conclusion than the Director did when he observed

> [t]he facts contained in this Decision reek of speculation and it seems that that is exactly how the Petitioners have utilized this license since acquiring it in 1988. They appear to have acted as brokers rather than persons who were truly interested in activating the license[,]

we cannot view this impression to be without basis in the record, *Greenwood v. State Police Training Ctr.*, 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992), and, consequently, anything but an inference logically flowing from the established facts, which the Director was permitted to draw.

The newest scenario, offered on petitioners' motion for reconsideration, apparently presented, in the Director's view, no better prospect that the license would be transferred for active use than had previously been advanced. Although, once the matter was on appeal to this court, the Director, in the absence of a remand from us, lacked jurisdiction to consider the matter as a motion for reconsideration as opposed to a new application, *R.* 2:9–1; *In re Plainfield–Union Water Co.*, 14 *N.J.* 296, 302–03, 102

*A.*2d 1 (1954); *see also Manalapan Realty v. Township of Mana-lapan,* 140 *N.J.* 366, 376–77, 658 *A.*2d 1230 (1995), it appears that the motion was nevertheless rejected on the merits rather than on jurisdictional grounds.

 Further, apart from jurisdictional considerations, although a party may always seek reconsideration to correct an error or a mistaken impression, or even to evaluate new evidence bearing upon the issues previously considered, if the motion to reconsider is based upon materially modified circumstances or upon so great a change in decisional factors as to render the former matter moot and to present the agency with a new balance of considerations, reconsideration, as distinguished from a new application, is an inappropriate vehicle for seeking modified relief. If petitioners before an agency "might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening." *Interstate Commerce Comm'n v. Jersey City,* 322 *U.S.* 503, 514, 64 *S.Ct.* 1129, 1134, 88 *L.Ed.* 1420, 1428 (1944), *quoted in Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 *U.S.* 281, 294–95, 95 *S.Ct.* 438, 446, 42 *L.Ed.*2d 447, 461 (1974); *United States v. Interstate Commerce Comm'n,* 396 *U.S.* 491, 521, 90 *S.Ct.* 708, 723, 24 *L.Ed.*2d 700, 722 (1970).

Affirmed.