784 A.2d 101 (2001)
345 N.J. Super. 175
Ruben GONZALEZ, Paul J. O'Donohue, Claude Craig, and Steven Block, Petitioners-Respondents,
v.
STATE OPERATED SCHOOL DISTRICT OF the CITY OF NEWARK, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2001.
Decided November 16, 2001.
*102 Cherie L. Maxwell, Newark, argued the cause for appellant (Sills Cummis Radin Tischman Epstein & Gross, attorneys; Ms. Maxwell, of counsel and on the brief; Joann Lynch, on the brief).
Philip Elberg, Newark, argued the cause for respondents (Medvin & Elberg, attorneys; Mr. Elberg, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for respondent State Board of Education (Michelle Lyn Miller, Deputy Attorney General, filed a statement in lieu of brief).
Before Judges PETRELLA, STEINBERG, and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
Appellant, the State-Operated School District of the City of Newark, appeals from a decision of the New Jersey State Board of Education ("State Board") that respondents, Ruben Gonzalez, Paul J. O'Donohue, Claude Craig, and Steven Block, were terminated from employment in a manner that triggered certain statutory benefits under N.J.S.A. 18A:7A-44 after the State-operated district was created. The State Board's decision purported to implement the statute by awarding respondents retroactive salary, plus sixty days back pay. We reverse.
Appellant was created on July 11, 1995, by the New Jersey State Department of Education pursuant to its powers under N.J.S.A. 18A:7A-34 to -52, the school district takeover statute. Those provisions prescribe a reorganization mechanism pursuant to which a local school district, in defined circumstances, can be superseded by a State-operated school district. In this instance, in connection with appellant's creation the Newark Board of Education was removed and its legal identity was terminated.
Respondents are four former employees of the Newark Board of Education. Mr. Gonzalez was the Assistant Executive Superintendent responsible for the supervision of schools in cluster 4, the area of Newark with the largest portion of Hispanic students. Mr. O'Donohue worked as the Director of Purchasing and Warehousing, *103 an unclassified civil service position. Mr. Craig was employed as the sole hearing officer in the Newark Board of Education's Office of Hearing Grievance. Mr. Block held the position of Executive Director in the Office of Accountability and Quality Assurance, an untenured non-civil service position. These four employees were all central administrative or supervisory staff employees in July 1995.
On or about July 13, 1995, each respondent was asked to submit a letter of resignation to the State district superintendent. On August 17, 1995, the State district superintendent directed that respondents be terminated. Respondents were informed that the letters of resignation which they provided upon request more than a month earlier had been accepted.
Approximately three months later, in November 1995, respondents challenged their terminations by filing petitions with the Commissioner of Education which requested a determination that they were entitled to retain their positions pending appellant's fulfillment of its alleged need to comply with N.J.S.A. 18A:7A-44b and c, reinstatement to their positions, and an award of back pay. The Department of Education transmitted these petitions to the Office of Administrative Law, where the matters were consolidated and assigned to an Administrative Law Judge (ALJ). Summary judgment motions were denied on January 10, 1997, by the ALJ, who stated that "a hearing should be conducted on three questions (1) whether [respondents] fall within N.J.S.A. 18:7A-44a or c; (2) whether [appellant] implemented a reorganization of central and supervisory staff, pursuant to N.J.S.A. 18A:7A-44b; and, (3) what relief should be granted to [respondents] if they ultimately prevail."
Following this decision, appellant filed a request for interlocutory review by the Commissioner of Education of the ALJ's order. On February 11, 1997, the Commissioner issued findings which concurred with the ALJ regarding the application of N.J.S.A. 18A:7A-44 to both tenured and nontenured employees, but which also modified the ALJ's decision by determining that the statute "applies only to those employees whose positions are abolished upon the establishment, or as a result of the reorganization of, a State-operated district; it does not apply to individual decisions to terminate employment where the underlying position is not abolished." Id. The Commissioner directed further fact-finding to decide whether respondents' positions were abolished pursuant to the takeover statute at issue, N.J.S.A. 18A:7A-44.
In the ALJ's Initial Decision, issued April 9, 1999, she found that respondents were not entitled to any relief. This decision was based upon the Commissioner of Education's February 11, 1997 clarifications regarding the non-applicability of N.J.S.A. 18A:7A-44 to them. She found that respondents, as employees-at-will, were terminated under the discretionary authority of the State superintendent and not pursuant to N.J.S.A. 18A:7A-44. She also found that N.J.S.A. 18A:27-4.1 did not apply. Her findings and determination in the Initial Decision were adopted by the Commissioner of Education.
Respondents appealed the Commissioner's decision to the State Board, which on May 3, 2000, awarded relief to respondents that included the salary each would have earned from the time they were terminated until the reorganization took effect, plus sixty days pay.
The State Board determined that respondents were entitled to employment protections pursuant to N.J.S.A. 18A:7A-44, which in pertinent part provides that:
b. Within one year of the establishment of the State-operated school district, *104 the State district superintendent shall prepare a reorganization of the district's central administrative and supervisory staff and shall evaluate all individuals employed in central administrative and supervisory staff positions. The State district superintendent shall implement the reorganization on the July 1 next following its preparation, unless otherwise directed by the commissioner.
c. Notwithstanding any other provision of law or contract, the positions of the central administrative and supervisory staff, instructional and noninstructional, other than those positions abolished pursuant to subsection a. of this section, shall be abolished upon the reorganization of the State-operated school district's staff. The State district superintendent may hire an individual whose position is so abolished, based upon the evaluation of the individual and the staffing needs of the reorganized district staff ... Employees or officers not hired for the reorganized staff shall be given 60 days' notice of termination or 60 days' pay. The notice or payment shall be in lieu of any other claim or recourse against the employing board or the school district based on law or contract... No employee whose position is abolished by operation of this subsection shall retain any right to tenure or seniority in the positions abolished herein.
N.J.S.A. 18A:7A-44b, c.
Thus, the State Board found that respondents were terminated outside of what it perceived to be a statutorily-mandated process provided under N.J.S.A. 18A:7A-44, which prescribes certain steps to be followed in the reorganization of a State-operated school district. The State Board stated that the State district superintendent did not have "carte blanche authority to effectuate blanket dismissals without regard to the statutory reorganization process," and rejected appellant's argument that the terminations of respondents were permissible based upon their employee-at-will status.
In particular, the State Board found that the statute conferred on respondents employment protections which they did not receive, namely, an evaluation of respondents' positions as part of the central administrative and supervisory staff, and notice prior to termination. It also found that the State district superintendent did not have authority to terminate respondents without notice or individualized reasons for her actions.
It is well settled "that an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine." Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397, 643 A.2d 546 (1994). An employment relationship "remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." Ibid.
Inasmuch as respondents were employees-at-will, they were subject to termination at any time for any reason by the State district superintendent, or, indeed, by the local district prior to appellant's creation. They were subject to termination regardless of the ultimate subsequent fate of their positions pursuant to the statutorily-mandated reorganization, which might take up to a year. The State Board was without authority to confer on respondents additional employment protections, because their at-will status precluded them from receiving such protections in the absence of the abolition of their positions pursuant to reorganization. See, Caponegro et al. v. State-Operated School District of the City of Newark, 330 N.J.Super. 148, 152, 748 A.2d 1208 (App. Div.2000), in which we noted that members *105 of the executive administrative staff from the State Operated School District of the City of Newark were employees-at-will, without contracts of employment. Respondents, as employees-at-will whose underlying positions had been unaffected by any reorganization at the time of their termination, were not in the circumstances entitled to the protection of notice or an evaluation of their employment status prior to termination.
The State district superintendent's discretionary power is based upon N.J.S.A. 18A:7A-35, which in pertinent part provides:
(d) The State district superintendent shall perform all the duties and possess all the powers heretofore and hereafter assigned in Title 18A of the New Jersey Statutes to central administrative and supervisory staff, instructional and noninstructional, which shall include but not be limited to the superintendent of schools, secretary of the board of education, school business administrator, school business manager, and assistants and clerks thereto.
(e) Except as otherwise provided in this amendatory and supplementary act, the State district superintendent shall have the power to perform all acts and do all things consistent with law necessary for the proper conduct, maintenance and supervision of the schools in the district.
Subsection (e) of the statute confers broad powers upon the State District Superintendent to "do all things consistent with law necessary for the proper conduct, maintenance and supervision of the schools in the district." Id. The State district superintendent had discretionary authority to remove the respondents upon the creation of the State-operated district, and did not thereby trigger the granting of relief in their favor of the nature awarded by the State Board.
We are persuaded that the State Board's decision in this case was erroneous as a matter of law because it was contrary to N.J.S.A. 18A:7A-44. Although we ordinarily defer to an agency's interpretation of a statute it is responsible for administering, In Matter of Richard R. Fleming, 290 N.J.Super. 195, 201, 675 A.2d 655 (App.Div.1996), we need not do so in the case of a plain error of law, as occurred here, because statutory interpretation ultimately is a judicial function, not an administrative one. Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973).
True, the statute required the State district superintendent to "evaluate all individuals employed in central administrative and supervisory staff positions," N.J.S.A. 18A:7A-44b, and specified that "[e]mployees or officers not hired for the reorganized staff shall be given 60 days' notice of termination or 60 days' pay." N.J.S.A. 18A:7A-44c. In our view, however, it is clear that these provisions do not apply to respondents, as former at-will employees who were no longer employed at the time of the reorganization. We acknowledge that respondents were central administrative or supervisory staff who were terminated without notice, but this was not done in violation of the statute because they were terminated before the reorganization had been accomplished. Thus, when terminated, respondents could not have lost their employment as a result of an abolition of their positions in a reorganization that had not yet occurred.
Accordingly, we are in substantial agreement with the Commissioner of Education's ruling that, although N.J.S.A. 18A:7A-44 applies to both tenured non-tenured employees,
it applies only to those employees whose positions are abolished upon the establishment, *106 or as the result of the reorganization of, a State-operated district; it does not apply to individual decisions to terminate employment where the underlying position is not abolished. Abolishment of a position and termination of employment are not synonymous and, in the latter circumstance, which is neither expressly addressed nor implicitly encompassed in the special statutory scheme governing establishment and operation of State-operated school districts, the terminated employee is afforded all the protections to which he or she would ordinarily be entitled by contract, tenure, or civil service status, no more and no less.

(Emphasis omitted).
In our view, it is of no consequence that respondents' resignations were not, as the State Board's decision observed, "voluntary," and that they "were not terminated for any individualized reason." Termination of an at-will employee need not be consensual or voluntary, and to require otherwise would turn the concept of at-will employment on its head. Moreover, the lack of an expressed individualized reason for termination does not compel the conclusion that appellant terminated respondents other than in an individualized manner, nor does it establish that appellant's action was only a subterfuge to carry out a de facto reorganization without the statutory requisites for a reorganization having to be met. The State Board's perception that respondents were "terminated for purposes of reorganization" is not a finding based on the evidence to which we owe deference, but an exercise in speculation that we may disregard as contrary to the record. As we stated in In the Matter of Mario Lalama, 343 N.J.Super. 560, 565, 779 A.2d 444 (App.Div.2001):
In a case where an administrative agency's findings of fact are contrary to the findings of the ALJ who heard the case, there is a particularly strong need for careful appellate review.
On the evidence presented, the ALJ found that respondents "have not demonstrated that their positions were abolished upon reorganization of the District ..., [and they] were terminated one year prior to the reorganization." We are unable to accept the State Board's effort to intuit to the contrary, which is not entitled to the regard it would deserve if it had been predicated on findings based on the evidence.
We are persuaded, then, that in its decision as to respondents' employment status, the State Board erred in failing to accord proper significance to respondents' at-will status, which led to their being terminated prior to, rather than in connection with the completion of, the statutory reorganization process. We hold that respondents' terminations were not inconsistent with, and did not trigger a remedy under, N.J.S.A. 18A:74-44.
We note finally that respondents contend that further support for their claim of improper termination is that they were entitled to full due process protections provided under N.J.S.A. 18A:27-4.1. This claim is not supportable, however, inasmuch as that statute does not apply to State-operated school districts in which the local board was abolished, as was the case here. The State Board reached the same conclusion as to the inapplicability of that statute and we find no basis to disagree with its decision in that respect.
Reversed.