748 A.2d 1208 (2000)
330 N.J. Super. 148
Concetta B. CAPONEGRO, Virginia Devane, Howard Johnson, Norman Jeffries and Bessie White, Petitioners-Appellants,
v.
STATE OPERATED SCHOOL DISTRICT OF the CITY OF NEWARK, ESSEX COUNTY, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2000.
Decided April 14, 2000.
*1209 Sanford R. Oxfeld, Newark, for petitioners-appellants (Balk, Oxfeld, Mandell & Cohen, attorneys; Mr. Oxfeld, of counsel and on the brief).
Cherie L. Maxwell, Newark, for respondent-respondent State-Operated School District of the City of Newark (Sills Cummis Radin Tischman Epstein & Gross, attorneys; Perry L. Lattiboudere, on the brief).
Terri A. Cutrera, Deputy Attorney General, for respondent-respondent State Board of Education (John J. Farmer, Jr., Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Cutrera, on the brief).
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This controversy arises out of the July 12, 1995, State takeover of the Newark public school system pursuant to N.J.S.A. 18A:7A-34 to -52, the consequent removal of the Newark Board of Education (Board), and the creation of the State Operated School District of the City of Newark (District).
Petitioners are former senior staff members whose positions were abolished as a result of the takeover, one by reason of N.J.S.A. 18A:7A-42a(3) and the other four by reason of N.J.S.A. 18A:7A-44a. All five had served the Board in their respective abolished administrative positions as at-will, non-union employees, although some were tenured in other positions they had previously held. All were terminated by letter dated and effective in July 1995. They filed a joint appeal with the Commissioner of Education, all asserting that they had an implied contract for the 1995-1996 school year that could not be abrogated without compensation. They also asserted that they were entitled on termination to payment for their respective accumulated vacation days, sick days and personal days. Finally, those terminated pursuant to N.J.S.A. 18A:7A-44a asserted that the sixty-day termination pay provided thereby should have been calculated on the basis of sixty working days, not on the basis of sixty calendar days. *1210 The matter was referred to the Office of Administrative Law as a contested case and tried before an administrative law judge (ALJ). The ALJ rejected all petitioners' assertions in her initial decision, which was generally concurred in by the Commissioner of Education, whose decision was affirmed by the State Board of Education. Petitioners appeal. We reverse in part, holding that petitioners' contractual right to payment on termination for accumulated vacation and sick days was not abrogated by N.J.S.A. 18A:7A-44a, and we remand to the Commissioner for calculation, consistent with this opinion, of the sums to which each petitioner is entitled. In all other respects we affirm.
In large measure the facts are undisputed. We consider them in the context of the relevant legislation. To begin with, there is no challenge to the determination of the Commissioner of Education of the necessity for the takeover by reason of the Board's failure to have assured the children of Newark "a thorough and efficient system of education...." N.J.S.A. 18A:7A-34. Nor is there any challenge on this appeal to the scope of the District's restructuring authority as provided for by the statute. The issues before us involve only the amount of compensation to which petitioners were entitled upon their respective terminations.
Petitioner Howard Johnson, whose at will job title at the time of his termination was Chief Auditor, was terminated pursuant to N.J.S.A. 18A:7A-42a(3), which provides in relevant part that "the services of the district auditor or auditors and attorney or attorneys shall be immediately terminated by creation of a State-operated school district...."[1] The remaining petitioners, Concetta B. Caponegro, Virginia Devane, Norman Jeffries, and Bessie White, were terminated pursuant to N.J.S.A. 18A:7A-44a (Section a), applicable to "the district's chief school administrator and those executive administrators responsible for curriculum, business and finance, and personnel." There is no dispute that these four petitioners were properly categorized as executive administrators subject to Section a. Caponegro's job title, at the time of the takeover, was Acting Executive Director of Human Resources. Devane's was Executive Director for the Office of Board Affairs. White's was Executive Director of Management and Budget. Jeffries's was Executive Controller. Section a provides in relevant part that these positions are to be abolished upon the creation of the State-operated District and that upon abolition:
[t]he affected individuals shall be given 60 days' notice of termination or 60 days' pay. The notice or payment shall be in lieu of any other claim or recourse against the employing board or the school district based on law or contract.
All petitioners but Devane, whose letter from the District was dated July 21, 1995, were advised on July 12, 1995, of the abolition of their respective at-will senior staff positions and their immediate termination therefrom.
As we understand this somewhat truncated record, whose material omissions we refer to hereafter, Johnson was deemed unentitled to the sixty-day severance pay because N.J.S.A. 18A:7A-42a(3) does not provide for it. The four petitioners terminated under Section a, however, all received it.[2] For reasons that are unexplained in this record, petitioner Jeffries *1211 also received, at the time of his termination, all the accumulated vacation, sick and personal day payment to which he claimed entitlement, and petitioner Johnson received a portion thereof. The other three received none of it. The Commissioner's decision, in affirming the ALJ's conclusion that petitioners were not entitled to be paid for these accumulated days, also directed Johnson and Jeffries to reimburse the District for the payments they had received.
We address first petitioners' claim that they had implied contracts of employment for the 1995-1996 school year by reason of the letter sent to each of them by the then Executive Superintendent, Eugene C. Campbell, on June 29, 1995, just prior to the takeover. The letter offered each of them reemployment for the upcoming school year. The record does not tell us whether there had been written contracts for the prior years of their employment. There is, however, no indication that any of the petitioners executed a written contract for 1995-1996. Nor does the record permit determination of whether such annual employment was subject to Board approval or whether the Superintendent himself had the authority to act alone. The Superintendent recollected that he had placed the issue of petitioners' 1995-1996 reemployment before the Board but was unable to remember whether he had done so simply to inform it of his action or to seek its approval by way of a vote. In any event, petitioners do not assert that they each actually had a binding and enforceable written and executed contract for 1995-1996 but only that each had an implied contract.
We need not consider whether the Superintendent's offer of employment led to any contractual statusimplied or otherwisebecause, as the Commissioner correctly pointed out, "even assuming, arguendo, petitioners can establish that a contract for their employment for the 1995-1996 school year, in fact, existed, the language in ... [the takeover statute] renders it abundantly clear that, upon creation of the State-operated School District of the City of Newark on July 12, 1995, any employment `contract' was extinguished." We are in complete agreement. There can be no question that the takeover statute expressly requires immediate abolition of the positions here in question, contract or not. Nor do we have any doubt that there was no constitutional impediment to the effective prospective nullification of any such contracts. We recognize that both the federal and the State constitutions prohibit the adoption of law impairing the obligation of contract. U.S. Const. art I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ ¶ 3. The courts have prescribed a three-pronged test for determining whether a statute offends the constitutional proscription, namely, the law "1) must substantially impair a contractual relationship, 2) must lack a significant and legitimate public purpose; and 3) must be based upon unreasonable conditions and be unrelated to appropriate governmental objectives." State Farm Auto. Ins. Co. v. State, 124 N.J. 32, 64, 590 A.2d 191 (1991). Even if there were here a contractual right to continued employment which the takeover statute substantially impaired, we think it clear beyond cavil that the second and third prongs of the test cannot be met. The takeover rested upon the State's determination that the Newark Board had woefully failed to perform its essential function of providing the City's children with a thorough and efficient education. It is obvious that responsibility for this failure was appropriately laid by the Legislature, in the first instance, upon the Board's senior management and that the only hope for remediation by the State Operated School District lay in its freedom to restructure the supervisory and teaching staff. The immediate abolition of the positions of top managers and termination of their continued employment, contract or not, was, therefore virtually mandated by "a significant and legitimate public purpose" and based upon reasonable conditions *1212 related to an appropriate governmental objective.
Although we are therefore persuaded that there was no constitutional prohibition against the abolition of petitioners' positions and their immediate termination, whether or not they had contracts, we are also satisfied that this holding does not resolve the issue of the conditions necessarily attendant upon their termination. There is indeed a distinction that must be drawn between a prospectively effective contract nullification on the one hand and, on the other, the abrogation of previously vested property rights. We are of the view that petitioners were entitled to the same deferred compensationthat is, their accumulated vacation and sick daysthat they would have received had they terminated their employment voluntarily. This compensation, we conclude, could neither be constitutionally withheld nor was intended by the takeover statute to be withheld.
We are aware of the statutory differences in respect of the severance compensation of different categories of terminated employees. Thus N.J.S.A. 18A:7A-42a(3) makes no provision for any severance compensation at all for a terminated district auditor. Section a provides that the sixty-day notice or sixty days' pay "shall be in lieu of any other claim or recourse against the employing board or the school district based on law or contract." We further note that Section c of N.J.S.A. 18A:7A-44, applicable to all former staff not rehired for the restructured staff other than those subject to Section a, also entitles those former staff members to sixty days' notice or sixty days' pay by exactly the same statutory formulation as is employed by Section a, providing that the notice or payment is in lieu of any other claim or recourse based on law or contract. Section c, however, goes on to provide that "[n]otwithstanding this limitation, nothing herein shall preclude an individual from asserting upon separation from service any legal contractual right to health care coverage, annuities, accrued vacation days, accrued sick leave, insurance and approved tuition costs." The ALJ, the Commissioner, and the State Board all read this quoted language of Section c to mean that only Section c employees were entitled to its benefit and that by the omission of this language from Section a and N.J.S.A. 18A:7A-42a(3), the Legislature expressed its intention that employees terminated under these two sections were not to be entitled to any of the additional benefits enumerated in Section c.
We are satisfied that this reading is too broad. Clearly, the Section c benefits include not only earned deferred compensation but also prospective benefitsthat is the obvious import of the inclusion of continuing health care coverage, insurance benefits, annuities, and tuition. We have no quarrel with the conclusion that Section a employees were not intended to have these prospective benefits upon termination, and, indeed, they do not argue to the contrary. But the benefits of accumulated vacation days and sick leave stand on an altogether different footing. As we pointed out in Matter of School Bd. of Morris, 310 N.J.Super. 332, 345-347, 708 A.2d 762 (App.Div.1998), a contractual right to compensable accumulated leave is typically characterized as deferred compensation since it constitutes remuneration for services already rendered and, to the extent already earned, is not subject to unilateral divestment by the employer. See also Baker v. Dep't of Labor & Industry, 183 N.J.Super. 29, 443 A.2d 222 (App. Div.1982); McEvoy v. Borough of Cliffside, 83 N.J.Super. 268, 272, 199 A.2d 397 (Law Div.1964). Thus as a matter of statutory construction, we read the language of Section c as affording the employees covered thereby a comprehensive package of benefits withheld from Section a employees and chief auditors. Even though that statutory benefit package includes the deferred compensation rights to accumulated vacation and sick leave, its primary focus, nevertheless, *1213 is primarily prospective in nature. Beyond that, we have no doubt that the vested-rights portion of the package the accumulated vacation days and sick leavecould not, in any case, have been constitutionally withheld and that, therefore, their inclusion in Section c was effectively surplusage. The insertion of this surplusage in the benefits package of Section c cannot, therefore, in our view, reasonably support the conclusion that its omission from the other two statutes expressed a legislative intent to deprive the employees covered by the other two sections of these vested accrued rights of deferred compensation. Thus, to the extent the pre-takeover contracts of employment of these petitioners require payment of this deferred compensation upon termination of employment, petitioners are entitled to receive it in the same manner as if their employment had been voluntarily terminated.
We are further satisfied that since this deferred compensation has already been earned, its unilateral divestment would run afoul of the State Farm test. In terms of traditional contract impairment analysis, we think it plain that the three-pronged test could not be met. That is to say, while the contract termination and withholding of prospective unearned benefits clearly advance the public purpose of the takeover and are patently based upon reasonable conditions related to appropriate governmental objectives, the same cannot be said of stripping terminated staff members of their vested and earned contractual right to payment for accrued vacation leave and sick days upon termination. This financial obligation of the Board and petitioners' concomitant right to this compensation were fixed prior to the takeover, represent no additional post-takeover incurring of new obligation, and is hardly necessary as a predicate for the essential restructuring of the school staff.
The problem then is to determine precisely what accumulated vacation days and sick leave benefits petitioners are entitled to. Before addressing that question, we can readily dispose of petitioners' claim to compensation for unused personal days. The testimony, including that of petitioner Caponegro, establishes that petitioners were entitled to three personal days annually, but if they were not used in the year earned, they were lost. While we are aware that there was testimony respecting an opportunity to "buy-back" those days on a three-to-one basis or, if less than all were used, to add the remaining day or two to accumulated sick leave for buy-back purposes, there was no evidence that any of these petitioners had exercised that option in the 1994-1995 school year. Accordingly, we are satisfied that none of them are entitled to any compensation for personal days.
With respect to vacation and sick leave, insofar as we are able to determine from the record, the Board had a written policy and procedural manual covering these issues with respect to employees, including these petitioners, who were not covered by collective negotiation agreements. It appears that for these employees, the manual had contract status. See generally Woolley v. Hoffmann-LaRoche, 99 N.J. 284, 491 A.2d 1257, modified, 101 N.J. 10, 499 A.2d 515 (1985). It also appears that in large measure the contractual benefits accorded the non-union administrative employees closely mirrored the benefits accorded by negotiated contract to twelve-month employees of the Board. Regrettably, the manual itself was not introduced into evidence and is not part of this record. Nevertheless, there are some issues regarding the definition of these rights that were generally agreed upon by the parties and can therefore be resolved without reference to the manual.
First, it was agreed that employees at petitioners' level were accorded twenty vacation days annually and permitted to accumulate *1214 a total of sixty days.[3] It was also agreed that such employees were permitted to receive compensation, at their option, for accumulated unused sick leave days at the rate of one day's compensation for each three unused sick leave days.[4] The testimony further established that these petitioners had been encouraged by the Board's Superintendent during the last several years of their employment not to take vacation days because their services were required. Finally, the testimony demonstrated the Board's uniform past policy and practice of paying employees compensation for their accumulated vacation days and for one-third of their accumulated sick days upon termination of employment. Nor was it suggested that as to days accumulated through the end of the school year prior to the year of termination, this practice was contrary to any provision of the applicable contract or policy manual. We are, therefore, satisfied that petitioners are each entitled to compensation for whatever number of vacation days each had accumulated as of the end of the 1994-1995 school year, up to the specified maximum of sixty as well as to compensation for accumulated sick leave on a one-for-three basis.
There is, however, a dispute regarding petitioners' vacation entitlement for the 1995-1996 school year. According to the testimony, administrative personnel covered by the manual were accorded their twenty days of vacation time at the beginning of each school year and were free, if the vacation was otherwise approved, to use the twenty days at any time during the school year, even at its commencement. The question then is how this entitlement translates into compensation for employees terminating their employment during the school year without having taken those days as vacation. Petitioners claim that since they were permitted to use these days at any time during the school year, they should be regarded as having been earned at the beginning of the school year and, therefore, compensated for in full irrespective of when, during the school year, the termination occurs. The District's Payroll Supervisor, carried over from her Board employment, testified, however, that when an employee left during the school year, the vacation days for that school year were prorated, the employee receiving 1.66 days of compensation for each month worked until at least the fourteenth day of the month.
We addressed this issue, albeit in a somewhat different context, in Ass'n of Sup'rs v. School Dist., 311 N.J.Super. 300, 709 A.2d 1328 (1998), involving twelve-month terminated Board employees subject to N.J.S.A. 18A:7A-44c, and in which we set aside an arbitration award according those employees the benefit of the entire year's vacation days rather them prorating them in accordance with the portion of the year actually worked. Although we recognized the Board's past practice of paying terminated employees for the full year's vacation days irrespective of when that termination occurred, we held that no such past practice could validly be enforced if contrary to those employees' contracts. We explained that:

*1215 The State District's plan to prorate vacation time compensation for employees whose status changed because of the takeover is manifestly consistent with sound public policy. Clearly, the purpose of the State takeover was to make the local school district more efficient and responsive to educational and economic reform. To require the State-operated district to continue an inefficient, costly administrative practice, not explicitly bargained for by the parties or sanctioned by the agreement, undermines the Act's goal to provide students with a "thorough and efficient" education. In this case, employees who were terminated or demoted to ten-month positions did receive sixty-days notice or sixty-days pay in lieu of advance notice, pursuant to N.J.S.A. 18A:7A-44(c). The State District did not require these employees to use their vacation time before they could collect the sixty-days pay. Also, the employees who testified before the arbitration panel agreed their status changed as of the July 19, 1996 notice. To give these employees the full twenty days of vacation, after they had worked only a few weeks of the new employment year, would require the State-operated school district to continue those very kinds of practices of the local district that likely contributed to the need for the takeover, thus continuing needlessly to drain money essential for educational purposes.

[Id. at 316, 709 A.2d 1328.]
The difficulty here is that although we understand that the benefits of these administrative employees accorded by the manual were intended generally to follow the contract rights of the twelve-month employees, we cannot say, without reviewing the manual, whether it provides for full or prorated payment or even addresses the question. Relying on Ass'n of Sup'rs, supra, we are satisfied that unless the manual otherwise explicitly requires, none of the five petitioners, with the exception of Devane who was terminated after July 14, is entitled to any payment for 1995-1996 vacation days and that her compensation must be prorated for the single month she worked.
The final issue before us is petitioners' claim that the sixty-day severance compensation of N.J.S.A. 18A:7A-44a intends compensation for sixty working days rather than sixty calendar days. We reject this contention for substantially the same reasons expressed by the ALJ, the Commissioner, and the State Board. We think it plain that the alternative sixty days' notice provided for by the statute means sixty calendar days. As a matter of common sense and common parlance it can mean nothing else. We also think it plain that the sixty days' notice was intended to be exactly congruent with the sixty days' compensation. If sixty days means calendar days for purposes of the notice, it also means calendar days for purposes of compensation. Furthermore, we reject, for the reasons stated by the agency, petitioner Johnson's contention that he is entitled to the sixty days' compensation as a Section a employee since he was misclassified as an employee under N.J.S.A. 18A:7A-42a(3). There is nothing in the text or policy of N.J.S.A. 18A:7A-42a(3) suggesting that it was meant to apply to outside auditors only. Johnson's position as the Board's Chief Auditor is expressly covered thereby, and the withholding of the sixty-day severance pay from Chief Auditors is explicit.
Beyond the issue of deferred compensation for accumulated vacation and sick leave, petitioners argue that they are entitled to damages because of their detrimental reliance on the June 29, 1995, offer of reemployment made to them by the Board's Superintendent. As we have said, however, whether or not that offer constituted an implied contract under ordinary circumstances, the fact remains that the District had the right nevertheless to terminate them and their recourse upon termination is limited to statutory benefits and vested rights.
*1216 We reverse the decision appealed from to the extent it denied petitioners compensation for accumulated vacation and sick days and remand for reconsideration and calculation of these benefits in accordance with the policy and procedure manual of the Board and, to the extent appropriate, the Board's past practices. We also remand for a determination of whether Johnson's accumulated vacation limit is forty or sixty days. In all other respects, the decision appealed from is affirmed.
NOTES
[1] Johnson filed a petition with the Merit System Board complaining about his termination and the District's refusal to afford him reemployment rights pursuant to the Civil Service Act, N.J.S.A. 11A:1-1 to 11A:12-6. The Merit System Board denied relief, Johnson appealed, and we affirmed by our opinion filed on April 17, 1998, under Docket Number A-2289-96T3, encaptioned I/M/O Johnson, et al. v. State Operated School District of Newark.
[2] We note that petitioner Devane, for reasons completely unexplained in the record, was not given her sixty-day severance pay at the time of her termination. Based on the District's stipulation that it had indeed failed to so compensate her, the Commissioner's decision directed that she receive that compensation forthwith.
[3] There was some testimonial dispute as to whether the Chief Auditor, petitioner Howard Johnson, was within the group of administrators entitled to accumulate sixty days or was limited to forty days. While the Chief Auditor and the other administrators are treated differently by the takeover statute in terms of the sixty-day severance compensation, there is nothing to suggest that they were disparately treated by the Board in terms of vacation entitlement. We think it plain that any such disparate treatment, if intended by the Board, would have to be demonstrated by the policy and procedure manual, and we therefore leave open the question of the number of days of Johnson's accumulated entitlement for decision on the remand.
[4] Where the record does not establish the number of sick days petitioners were annually entitled to, we note that N.J.S.A. 18A:30-2 accords them a minimum of ten paid sick days a year. The manual may be further elucidating.