978 A.2d 295 (2009)
409 N.J. Super. 467
NEW JERSEY ASSOCIATION OF SCHOOL BUSINESS OFFICIALS, Appellant,
v.
Lucille E. DAVY, Commissioner, New Jersey Department of Education, Respondent.
DOCKET NO. A-6074-07T2.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 2009.
Decided September 2, 2009.
*296 Vito A. Gagliardi, Jr., argued the cause for appellant (Porzio, Bromberg & Newman, attorneys; Mr. Gagliardi, of counsel and on the brief; Marie-Laurence Fabian, Kerri A. Wright, Morristown and Michael S. Williams, Trenton, on the briefs).
Michelle Lyn Miller, Senior Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Miller, on the brief).
Before Judges SKILLMAN, GRALL and ESPINOSA.
The opinion of the court was delivered by
*297 GRALL, J.A.D.
The Commissioner of the Department of Education has adopted regulations entitled "Fiscal Accountability, Efficiency and Budgeting Procedures," N.J.A.C. Title 6A, Chapter 23A, to implement laws enacted to revise the school funding formula and reduce property taxes, in part, through oversight and limitation of government spending by school districts. See L. 2007, c. 53, 63, 92 and 260. Asserting the interests of its members, the New Jersey Association of School Business Officials (Association) appeals and challenges the validity of regulations that set standards for payments in lieu of unused sick and vacation leave to school district business administrators, N.J.A.C. 6A:23A-3.1(e)(6)-(8),[1] and condition a school district's receipt of state aid on its adoption of a nepotism policy, N.J.A.C. 6A:23A-6.2.
The Association contends that the Commissioner has exceeded the authority delegated by the Legislature and adopted regulations that are inconsistent with the enabling acts and in conflict with other statutes addressing compensation and nepotism. We uphold the challenged measures because they are not inconsistent with statutory law and are within the powers "`expressly granted'" to the Commissioner and those "`reasonably necessary or appropriate to effectuate the specific delegation.'" N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978) (quoting In re Regulation F-22 of the Office of Milk Indus., 32 N.J. 258, 261, 160 A.2d 627 (1960)).

I
Legislative grants of administrative authority are construed liberally "to enable the agency to accomplish its statutory responsibilities [and] effectuate fully the legislative intent." N.J. Guild, supra, 75 N.J. at 562, 384 A.2d 795. In assessing the scope of delegated authority, our courts "look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." Ibid. Administrative action that "`can be said to promote or advance the policies and findings that served as a driving force for the enactment of that legislation'" is upheld. In re Certain Amendments to Adopted and Approved Solid Waste Mgmt. Plan of Hudson County Solid Waste Mgmt. Dist., 133 N.J. 206, 216, 627 A.2d 614 (1993) (quoting A.A. Mastrangelo, Inc. v. Comm'r of Dep't of Envtl. Prot., 90 N.J. 666, 684, 449 A.2d 516 (1982)).

II
Given the foregoing standards governing judicial review, examination of the pertinent enabling acts informed by the problems the Legislature identified and the goals it sought to achieve is essential. In this case, there is an abundance of relevant material.

A
The Legislature commenced the effort that led to the adoption of the Commissioner's regulations addressing "Fiscal Accountability, Efficiency and Budgeting Procedures" in July 2006. Recognizing that the "Legislature and the Governor" had the responsibility "to protect the welfare and well-being of" the people of New Jersey by addressing "[t]his State's high property taxes," the Legislature sought to "bring about property tax reform based *298 upon a fairer distribution of tax burdens and the adoption of efficiencies." Assemb. Concurrent Res. 3, 212th Legis. Sess. (2006).[2]
Through that resolution, the Legislature established four joint legislative committees to review and formulate proposals for "school funding, government consolidation and shared services, public employee benefits" and constitutional reform. Ibid. Each of the joint committees was directed to prepare a report proposing measures "to bring about property tax reform." Ibid.
Specific directives given to the several joint committees are relevant here. Among the duties assigned to the Joint Legislative Committee on Public School Funding Reform was formulation of proposals to "control school district spending, particularly administrative spending." Ibid. The Joint Legislative Committee on Government Consolidation and Shared Services was directed "to review and formulate proposals that address the sharing of services and regionalization of functions at all levels of government." Ibid. And, the Joint Legislative Committee on Public Employee Benefits Reform was assigned the duty "to review and formulate proposals that address abuses of the system of benefits provided to public employees, including all branches of State government and all local government entities, and to control the costs of the State and its political subdivisions for public employee retirement, health care and other benefits." Ibid. The joint committees issued their final separate reports on December 1, 2006.[3]
Each of the joint committees conducted public hearings, gathered evidence and received comments from professional organizations and the public. Three committees relied, in part, upon a report issued by the State Commission of Investigation (SCI) in March 2006 and entitled "Taxpayers Beware: What You Don't Know Can Cost YouAn Inquiry Into Questionable and Hidden Compensation for Public School Administrators."[4] As "part of a broad ongoing effort ... to identify waste and abuse at all levels of government in New Jersey," id. at 1 (executive summary), the SCI examined "employment contracts and compensation arrangements between public school administrators and boards of education" and identified "questionable and excessive practices that, collectively, cost unsuspecting New Jersey taxpayers millions of dollars," ibid. The excess administrative costs identified included perquisites such as travel expenses, clothing and housing allowances and the award of "inordinate amounts of sick, vacation and other forms of paid leave and the cashing-in of unused leave" in return for payments far greater than those provided to state employees. Id. at 6. The SCI attributed these costly benefit awards to the fact that employment contracts for administrators were negotiated privately and without oversight by county or state officials and not disclosed to the public. Id. at 57-59. The SCI recommended reforms. Id. at 60-71.
Referencing and reiterating the SCI's findings, the joint legislative committees made additional findings and recommended reform. See J. Legis. Comm. on *299 Public School Funding Reform, Final Report, 212th Legis. Sess., at 88-90 (2006) (hereinafter PSFR); J. Legis. Comm. on Government Consolidation and Shared Services, Final Report, 212th Legis. Sess., at 55-57, 61-63 (2006) (hereinafter GCSS); J. Legis. Comm. on Public Employee Benefits Reform, Final Report, 212th Legis. Sess., at 141-45 (2006) (hereinafter PEBR). With respect to school funding, the determination was that "any new school funding formula must include mechanisms to control the taxing and spending behavior of school districts and to promote greater efficiencies." PSFR, supra, at 1. The committee considering consolidation and shared services found oversight of "[s]chool superintendents ... with respect to administrative spending" lacking and a need to "promote accountability and cost savings." GCSS, supra, at 2. The committee on employee benefits found a "widespread practice of allowing [school district] administrators to cash-in substantial amounts of accumulated sick and vacation leave at retirement or upon departure." PEBR, supra, at 142, 144.
The committees recommended measures to foster accountability through public disclosure of contract benefits provided to administrators, PSFR, supra, at 89-90; GCSS, supra, 61-63, and enhanced oversight of "administrative spending in districts" by the Commissioner and "executive county superintendent[s]" with authority to "[a]pprove or disapprove of the hiring, compensation, and benefit plans of local school superintendents" and "veto excessive non-instructional expenses," GCSS, supra, at 56. There were specific recommendations for expanding the Commissioner's obligations and authority such as conditioning reappointment of executive county superintendents and superintendents and business administrators of local districts upon performance evaluations and authorizing corrective action by the Commissioner to address non-compliance with standards set by the Commissioner for expenditure of public funds for education on administrative costs. Id. at 56-57; PSFR, supra, at 80-90.
Reasoning that standardization "for public employees serving at different levels of government" would "enable local governments to control public employee benefit costs" and thereby "reduce property tax revenue needs," the Joint Legislative Committee on Public Employee Benefits Reform urged enactment of legislation limiting payments for sick leave and accumulation of vacation leave to "all local government and board of education employees" so as to bring those benefits "in line with the current law and practice for State employees." PEBR, supra, at 143-45. The reference is to N.J.S.A. 11A:6-2, which permits state employees to accrue no more than one-year's vacation leave absent gubernatorial declaration of emergency, and N.J.S.A. 11A:6-16 and N.J.S.A. 11A:6-19, which authorize payment for unused sick leave "at the rate of one-half of the eligible employee's daily rate of pay" and fix the maximum benefit at $15,000.

B
The Legislature responded. The laws enacted and pertinent here are Chapters 53, 63, 92 and 260 of the Laws of 2007. Because the unifying object of each of the several chapters is broad, each chapter amends and supplements statutes codified in multiple titles of our statutes. Thus, the amendments and additions to the various titles and the scope of the authority delegated to the Commissioner must be understood with reference to that context and the relationship between the various amendments. See Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15, 878 A.2d *300 829 (2005) (discussing construction of related statutes adopted during the same session).
Through Chapter 53 of the Laws of 2007, the Commissioner must develop "plain language budget summary forms for the use of school districts," require annual submission and make the forms available to the public. N.J.S.A. 18A:22-8a(a) (L. 2007, c. 53, § 2a); see also N.J.S.A. 18A:22-8. With respect to contractual benefits awarded by school districts to business administrators, superintendents and assistant superintendents, the Commissioner must require each district to provide "a detailed statement" of "all forms of compensation provided for under the contract," including benefits to be "conferred after or upon separation from the school district." N.J.S.A. 18A:7F-5.3(a)(1), (3) (L. 2007, c. 53, § 4(a)(1), (3)). The district's business administrator must certify the accuracy of reports of all taxable income paid by the district, N.J.S.A. 18A:17-14.4 (L. 2007, c. 53, § 8).
The Commissioner must act upon receipt of the information. If, based on the information received from the district, the Commissioner "believes ... the conduct of a superintendent, assistant superintendent or school business administrator warrants the revocation of the certificate held [by one of those officers] the commissioner shall recommend such revocation." N.J.S.A. 18A:6-38.1(a) (L. 2007, c. 53, § 10(a)). And, when "any condition exists within a school district that would authorize the appointment of a State monitor pursuant to the provisions of [N.J.S.A. 18A:7A-55], the State Board of Examiners shall review the certification of the superintendent and the business administrator." N.J.S.A. 18A:6-38.2 (L. 2007, c. 53, § 11).
The board of education of every district must adopt a "travel policy" that requires a board member to "recuse himself from voting on travel" if a member "of his immediate family" has a "personal involvement" and a general rule that a board member "shall not[] act in his official capacity in any matter in which he or a member of his immediate family has a personal involvement that is or creates some benefit to the school official or member of his immediate family." N.J.S.A. 18A:11-12(k)-(l).
Through Chapter 63 of the Laws of 2007, the Legislature provided for additional oversight of school district spending by the Commissioner through "executive county superintendents." L. 2007, c. 63, §§ 42-58; N.J.S.A. 18A:7-1 to -16. Pursuant to N.J.S.A. 18A:7-1, executive county superintendents are appointed by the Governor upon the Commissioner's recommendation and with the advice and consent of the Senate. Executive county superintendents must "[p]romote administrative and operational efficiencies and cost savings within the school districts in the county while ensuring that the districts provide a thorough and efficient system of education." N.J.S.A. 18A:7-8(d). The Commissioner is responsible for assessment of their performance in "facilitating administrative efficiencies" based on "standards" set by the Commissioner including factors such as "per-pupil administrative expenditures." N.J.S.A. 18A:7-1(a)-(b).
Executive county superintendents must "[r]eview and approve, according to standards adopted by the commissioner, all employment contracts for superintendents of schools, assistant superintendents of schools, and school business administrators in school districts within the county, prior to the execution of those contracts." N.J.S.A. 18A:7-8(j) (emphasis added).
Chapter 92 of the Laws of 2007 addresses a variety of benefits for public employees at all levels of government. Pertinent here are payments for unused *301 sick and vacation leave. That benefit is addressed in five sections of the Chapter that each restrict, prospectively, accumulation of vacation leave and payments for unused sick leave in conformity with the statutes applicable to state employees. Payments for unused sick and vacation leave to officers and employees made by a "board of education, or an agency or instrumentality thereof," are addressed in sections 44 and 46 of Chapter 92, N.J.S.A. 18A:30-3.5 and N.J.S.A. 18A:30-9; payments for unused sick and vacation leave to officers and employees made by a political subdivision that has not adopted Title 11A are addressed in sections 43 and 45 of Chapter 92, N.J.S.A. 40A:9-10.2 and N.J.S.A. 40A:9-10.3; and payments for unused sick leave to officers and employees made by a political subdivision that has adopted Title 11A of the New Jersey Statutes are addressed in section 42 of Chapter 92, N.J.S.A. 11A:6-19.1.[5]
The last in the series of relevant laws is the School Funding Reform Act of 2008, L. 2007, c. 260. Section 2 of that act, N.J.S.A. 18A:7F-44, includes the Legislature's findings and declarations. The following declaration is included:
It is imperative that any new school funding formula work in conjunction with the key school accountability measures that have been enacted in recent years to promote greater oversight, transparency, and efficiency in the delivery of educational services. These accountability measures include the New Jersey Quality Single Accountability Continuum, the "School District Fiscal Accountability Act," P.L.2006, c. 15 (C.18A:7A-54 et seq.), P.L.2007, c. 63 (C.40A:65-1 et al.) which established the duties and responsibilities of the executive county superintendent of schools, and P.L.2007, c. 53 (C.18A:55-3 et al.).

[N.J.S.A. 18A:7F-44(o) (emphasis added).]
Section 18 of Chapter 260 provides the Commissioner additional authority and responsibility consistent with that declaration. N.J.S.A. 18A:7F-60, provides:
The Commissioner of Education shall not authorize the disbursement of funds to any district until the commissioner is satisfied that all educational expenditures in the district will be spent effectively and efficiently in order to enable students to achieve the core curriculum content standards. The commissioner shall be authorized to take any affirmative action as is necessary to ensure the effective and efficient expenditure of funds by school districts and county vocational school districts.
In enacting the foregoing reform, the Legislature gave the Commissioner authority to adopt rules and regulations. N.J.S.A. 18A:11-13,[6] authorizes the Commissioner to adopt "such rules and regulations as the commissioner deems necessary to effectuate the purposes of P.L.2007, c. 53," which includes provisions obligating districts to adopt a policy prohibiting a board member's participation in matters involving members of his or her immediate family and requires the Commissioner *302 to take action when warranted by information revealed by review of district budgets.
With respect to the reform included in Chapter 63, N.J.S.A. 18A:7-16[7] gives the Commissioner authority to promulgate "such rules and regulations as the commissioner deems necessary to implement the provisions" of N.J.S.A. 18A:7-1 to -15. That grant of rulemaking authority encompasses the Commissioner's establishment of the "standards" against which executive county superintendents must review administrators' contracts and the Commissioner's obligation to assess the performance of executive county superintendents and take appropriate action when warranted. N.J.S.A. 18A:7-4; N.J.S.A. 18A:7-8(j); N.J.S.A. 18A:7-11.
Finally, section 83 of the School Funding Reform Act of 2008 authorizes the Commissioner to adopt "such rules and regulations as the commissioner deems necessary to implement the provisions of" that Act.[8] That Act references the imperative relationship between implementation of Chapters 53 and 63 and the school funding formula and prohibits the Commissioner from authorizing the disbursement of funds for "educational expenditures" before being "satisfied that all educational expenditures in the district will be spent effectively and efficiently in order to enable students to achieve the core curriculum content standards." N.J.S.A. 18A:7F-60.

III
We consider first the Association's challenges to the regulations stating standards for award of payment for unused sick and vacation leave to be applied by executive county superintendents in reviewing the employment contracts of superintendents, assistant superintendents and business administrators. N.J.A.C. 6A:23A-3.1(e)(6)-(8). As noted above, N.J.S.A. 18A:7-8(j) requires the Commissioner to adopt the standards for that contract review and N.J.S.A. 18A:7-16 authorizes the adoption of regulations.
The standards the Association challenges incorporate the restrictions on payments for sick leave adopted as N.J.S.A. 18A:30-3.5 and accumulation of vacation time adopted in N.J.S.A. 18A:30-9 with the passage of Chapter 92. In pertinent part, N.J.A.C. 6A:23A-3.1 provides:
(e) The contract review and approval shall be consistent with the following additional standards:
....
6. Contractual provisions regarding accumulation of sick leave and supplemental compensation for accumulated sick leave shall be consistent with N.J.S.A. 18A:30-3.5. Supplemental payment for accumulated sick leave shall be payable only at the time of retirement and shall not be paid to the individual's estate or beneficiaries in the event of the individual's death prior to retirement. Pursuant to N.J.S.A. 18A:30-3.2, a new board of education contract may include credit of unused sick leave days in accordance with the new board of education's policy on sick leave credit for all employees.
7. Contractual provisions regarding accumulation of unused vacation leave and supplemental compensation for accumulated unused vacation leave shall be consistent with N.J.S.A. 18A:30-9. Contractual provisions for payments of accumulated vacation leave prior to separation can be included but only for leave accumulated prior to June 8, 2007 and remaining unused at the time of *303 payment. Supplemental payments for unused vacation leave accrued consistent with the provisions of N.J.S.A. 18A:30-9 after June 8, 2007 as well as unused vacation leave accumulated prior to June 8, 2007 that has not been paid, shall be payable at the time of separation and may be paid to the individual's estate or beneficiaries in the event of the individual's death prior to separation.
8. Contractual provisions that include a calculation of per diem for 12-month employees shall be based on a 260-day work year.
The Association does not claim that the regulation imposes limitations on payments different than those set forth in N.J.S.A. 18A:30-3.5 or N.J.S.A. 18A:30-9. That argument could not be made because there is no material difference between the statutory limitations and those set forth in the regulation.
The Association's primary claim is that the Commissioner's regulation exceeds the delegated authority by giving greater effect to these statutory limitations than the Legislature intended. The Association asserts that these statutes do not apply to business administrators appointed by a board of education because they do not fall within the statutory definition of "officer or employee." N.J.S.A. 18A:30-3.5; N.J.S.A. 18A:30-9. Both statutes provide:
As used in this section, "officer or employee" means an elected official; or a person appointed by the Governor with the advice and consent of the Senate, or appointed by the Governor to serve at the pleasure of the Governor only during his or her term of office; or a person appointed by an elected public official or elected governing body of the political subdivision, with the specific consent or approval of the elected governing body of the political subdivision that is substantially similar in nature to the advice and consent of the Senate for appointments by the Governor of the State as that similarity is determined by the elected governing body and set forth in an adopted resolution, pursuant to guidelines or policy that shall be established by the Department of Education, but not including a person who is employed or appointed in the regular or normal course of employment or appointment procedures and consented to or approved in a general or routine manner appropriate for and followed by the political subdivision, or the agency or instrumentality thereof.

[N.J.S.A. 18A:30-3.5; N.J.S.A. 18A:30-9 (emphasis added).]
The preliminary portion of this definition, which appears without underscore above, identifies officers and employees subject to the restrictions, and the final portion, which is underscored, identifies those who are excluded.
The Association and the Commissioner apparently agree that the preliminary portion does not include any officer or employee of a board of education, but neither party explains why that construction is correct. Implying that the statutory language is the product of a mistake in draftsmanship, the Commissioner observes that "the difficulty with the section applicable to school districts is that the definition of `officer or employee' found therein is substantially similar to the definition found in the section applicable to local governments."[9] The Commissioner asserts that *304 N.J.S.A. 18A:30-3.5 and N.J.S.A. 18A:30-9 would be a "nullity" if this definition of "officer and employee" were applied as written. On that ground, the Commissioner urges us to uphold the regulation as a reasonable measure necessary to effectuation of her obligations to set standards for administrators' contracts and prevent excessive expenditure of public funds on administrative costs.
In response to the Commissioner's claim that the statute would be a nullity if the definition were read literally, the Association offers nothing but an erroneous assertionthat a literal reading would include state monitors and officers appointed in State-operated school districts. While this definition of "officer or employee" is far from clear or unambiguous, it cannot be read, as the Association suggests, to include state district superintendents, who are appointed by the State Board of Education upon recommendation of the Commissioner, N.J.S.A. 18A:7A-35(a), or state monitors, who are appointed by the Commissioner, N.J.S.A. 18A:7A-55(a). That is so because neither state monitors nor state district superintendents are "elected" or appointed by the "Governor" or by "an elected public official or [an] elected governing body of the political subdivision." N.J.S.A. 18A:30-3.5; N.J.S.A. 18A:30-9; see N.J.S.A. 18A:4-1 (providing that the State Department of Education, which includes the State Board and the Commissioner, is a "principal department in the executive branch of the state government"); N.J.S.A. 18A:4-4 (appointment of the members of the State Board); N.J.S.A. 18A:4-21 (appointment of the Commissioner).
Absent any explanation or argument from the parties as to why they share the view that the language describing officers and employees included in this definition excludes any officer or employee appointed by a board of education, we surmise their interpretation is based on the assumption that the phrase "elected governing body of the political subdivision" refers to the governing body of a county or municipality and not to a school board. If that interpretation were clearly correct, we, like the parties, would be unable to identify readily any officer or employee of a school district's board of education who would fall within the definition. Pursuant to N.J.S.A. 18A:16-1, "[e]ach board of education" has the authority, subject to provisions of law, to appoint a board secretary, school business administrator, superintendent, and treasurer as well as principals, teachers, janitors and "other officers and employees."
We cannot conclude, however, that the Legislature intended to enact a measure that has no apparent import. To adopt that view after reading the various reports of the joint legislative committees and the findings and declarations the Legislature adopted, one would have to assume that the Legislature intended to do nothing other than convey an impression of meaningful reform while acting to preserve the status quo. That assumption would require us to impute an absurdly unreasonable intention to the Legislature, which is something that courts may not do, even when the absurd result seems to be dictated by a literal interpretation of the statutory language.[10]See N.J.S.A. 1:1-1; *305 Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392-93, 774 A.2d 495 (2001).
In this case, the language is not sufficiently clear to compel the conclusion that these statutory limitations on award of cash payments for sick and vacation leave have no import. The phrase "elected governing body of the political subdivision" reasonably may be understood to mean the elected governing body of a "municipality" or "county," but that is not the only reasonable construction. While the term "municipality" is defined in N.J.S.A. 1:1-2 and that meaning applies throughout the statutes "[u]nless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction," the phrases "political subdivision" and "governing body," have no generally applicable assigned meaning. Ibid. Accordingly, those phrases must "be read and construed with their context and shall, unless inconsistent with the manifest intent of the Legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1.
The usage of the language at issue here"governing body" and "political subdivision"varies. This court has recognized that a school district is a local governmental unit governed by the school district's board of education. See Hamel v. State, 321 N.J.Super. 67, 75, 728 A.2d 264 (App.Div.1999) (discussing inapplicability of charitable immunity to school districts and noting that "[p]ublic school boards are the governing bodies of school districts which are local government units themselves" (internal quotations omitted)); Botkin v. Mayor & Borough Council of Westwood, 52 N.J.Super. 416, 425, 145 A.2d 618 (App.Div.) (noting "[i]n New Jersey school districts of whatever classification, though coterminous with municipal boundaries except in cases of consolidated or regional districts, are, and have been for more than half a century, local governmental units, governed by a board of education"), appeal dismissed, 28 N.J. 218, 146 A.2d 121 (1958).
Similarly, in statutes like these that are applicable to various governmental entities at the state, county and municipal level, the Legislature previously has used the term "governing body" to refer to school boards and other governmental agencies with local jurisdiction over specific matters and the term "political subdivision" to refer to a school district and those local units. For example, in making certain workers' compensation benefits available to firefighters injured in specified circumstances, the Legislature defined the group as follows: "[e]very officer, appointed or elected, and every employee of the State, county, municipality or any board or commission, or any other governing body, including boards of education, and governing bodies of service districts" qualified under the statute. N.J.S.A. 34:15-43 (emphasis added). And, in enacting a law providing governmental entities authority to file bankruptcy petitions, the Legislature employed the following language: "Any county, municipality, school district or other political subdivision of this State, hereinafter in this article referred to as `political subdivision.'" N.J.S.A. 52:27-40 (emphasis added). Similar terms have been employed in several statutes addressing benefits to public employees generally. See, e.g., N.J.S.A. 38:23-4, -4.1 (leaves of absence); N.J.S.A. 38:23-5 (retirement funds); N.J.S.A. 38:23A-2 (military service and qualifications based on age); N.J.S.A. 43:1-1.1 (military service and mandatory retirement).
*306 Where, however, the potential for confusion is inherent because the Legislature intends to require joint action by the governing body of a municipality and the board of education of the school district in that municipality or to permit action by one of those bodies but not the other, more precise language is generally employed. See, e.g., N.J.S.A. 18A:39-1.2 (providing that when "the governing body of a municipality finds that for safety reasons it is desirable to provide transportation to and from a school for pupils living within the municipality ... the governing body and the board of education of the district are authorized to enter into a contract"; further providing that "funds required to be paid by the municipality to the board of education under such a contract shall be appropriated by the governing body and paid to the custodian of school moneys of the district"; and authorizing "the governing body of the municipality [to] charge the parents or guardians of children" under circumstances specified); N.J.S.A. 18A:7G-46 (requiring joint action by "the board of education of the district and the governing body of the municipality in which the district is situate").
Because there is no universally applicable usage of the terms "governing body" and "political subdivision" in common parlance or law, the meaning must be drawn from the context and in light of the manifest intention of the Legislature. N.J.S.A. 1:1-1. This reference to a "governing body of the political subdivision" appears in the context of a statute governing payments by "a board of education, or an agency or instrumentality thereof" for sick leave, N.J.S.A. 18A:30-3.5, and accrual of vacation leave by "an officer or employee of a board of education, or an agency or instrumentality thereof" for accumulated vacation, N.J.S.A. 18A:30-9. So viewed, the phrase "elected governing body of the subdivision" can be understood to refer to the board of education as the governing body of the school district because such appointments are generally made by the board of education. N.J.S.A. 18A:16-1.
Our conclusion is not affected by the fact that the definitions of officer and employee included in N.J.S.A. 18A:30-3.5 and N.J.S.A. 18A:30-9 refer to an "elected governing body." Our laws provide for both elected and appointed local boards of education. See N.J.S.A. 18A:12-7 (providing for "appoint[ment] by the mayor or other chief executive officer of the municipality constituting the district" in a Type I district); N.J.S.A. 18A:12-11 (providing for election in Type II districts having elected boards); N.J.S.A. 18A:12-17 (providing for appointment by the mayor or other chief executive officer of the municipality in Type II districts with appointed boards). We are no more inclined, however, to conclude that the Legislature intended to inject new confusion by providing different rules for board employees depending upon whether the members of the local board are elected or appointed than we are to conclude that the Legislature intended to adopt restrictions that appear to include no one.
Here, the "context" of these statutes limiting benefits is broader than the provisions themselves; they are two of the forty-nine sections included in Chapter 92 of the Laws of 2007. As our previous discussion of Chapter 92 indicates, the common subject of Chapter 92 is benefits for officers and employees of governmental entities of the State, counties, municipalities and school districts. Thus, it is reasonable to conclude that the Legislature's reference to "governing body of the political subdivision" was employed, as it has been in other contexts involving governmental units of state and local government, to encompass a school board as the governing body of the political subdivision when a *307 school district's employees are at issue and the governing body of a municipality where employees of the municipality are at issue. See N.J.S.A. 18A:10-1. In fact, that is what was done in the companion statutes included in Title 40A.
Further support for that construction is found in sections of Chapter 92 establishing a defined contribution retirement program. Section 2 of Chapter 92, N.J.S.A. 43:15C-2, identifies the group of officers and employees eligible to participate in that program in terms quite similar to those employed in N.J.S.A. 18A:30-3.5 and N.J.S.A. 18A:30-9.[11] Unlike the statutes at issue here, however, the "defined contribution" statutes define the term "employer" as well as the phrase "officer or employee." N.J.S.A. 43:15C-1. The term employer means "the State or a political subdivision thereof, or an agency, board, commission, authority or instrumentality of the State or a subdivision, that pays the base salary of a participant for services rendered by the participant." Ibid. And, additional provisions defining eligibility for that program indicate that the Legislature intended to include at least some persons employed by boards of education. See, e.g., N.J.S.A. 43:15C-2(a)(3), (b)(4).
In any event, the question before us on this appeal does not require us to decide the precise scope of the group of officers and employees included in N.J.S.A. 18A:30-3.5 and N.J.S.A. 18A:30-9. The issue is solely the validity of the Commissioner's decision to include these statutory limitations on payments for unused sick and vacation leave among the standards against which the executive county superintendents must evaluate contracts of employment for superintendents, assistant superintendents and school business administrators pursuant to N.J.S.A. 18A:7-8(j).
We have no doubt that the Commissioner's incorporation of these standards is a reasonable action that promotes and advances the goals the Legislature charged the Commissioner to meet by directing the adoption of standards for review and disapproval of these administrators' employment contracts. See In re Certain Amendments to Adopted and Approved Solid Waste Mgmt. Plan, supra, 133 N.J. at 216, 627 A.2d 614. The ambiguity in the statutory definition of "officer or employee" favors a construction including at least some officers and employees appointed by boards. Moreover, with unmistakable clarity, the Legislature stated its perception that alleviation of the tax burden by eliminating extraordinary payments to these officers through such contract review is imperative to the proper operation of any school funding formula. Further, the Legislature made the Commissioner responsible for setting and compelling compliance with standards that limit spending on such benefits.
Thus, we do not view the ambiguous definition as a bar to the Commissioner's adoption of a legislatively approved standard for use by executive county superintendents in fulfilling their obligation to review contracts of business administrators so as to prevent excessive expenditures on administrative costs. The Commissioner's action is well within her delegated authority and the power reasonably incidental and necessary to the discharge of the responsibilities assigned to her pursuant to Chapters 53, 63 and 260 of the Laws of 2007.
*308 The Association argues that the regulation must be invalidated because it is in direct conflict with the exclusionary clause of this definition of officer or employee, which exempts persons who are "employed or appointed in the regular or normal course of employment or appointment procedures and consented to or approved in a general or routine manner appropriate for and followed by the political subdivision, or the agency or instrumentality thereof." N.J.S.A. 18A:30-3.5; N.J.S.A. 18A:30-9 (quoted with emphasis above).
However, it is apparent that business administrators of school districts are not appointed "in the regular or normal course of employment or appointment procedures." The statute governing appointment of school business administrators provides:
A board or the boards of two or more districts may, under rules and regulations prescribed by the State board, appoint a school business administrator by a majority vote of all the members of the board, define his duties, which may include serving as secretary of one of the boards, and fix his salary, whenever the necessity for such appointment shall have been agreed to by the county superintendent of schools or the county superintendents of schools of the counties in which the districts are situate and approved by the commissioner and the State board.

[N.J.S.A. 18A:17-14.1 (emphasis added).]
These appointments requiring prior approval by an executive county superintendent,[12] the Commissioner and the State Board are not fairly deemed to be among those made "in a general or routine manner appropriate for and followed by the political subdivision, or agency or instrumentality thereof." The statutes upon which the Association relies governing the appointment of teaching staff members, N.J.S.A. 18A:27-1, and certificated and non-certificated employees, N.J.S.A. 18A:27-4.1, do not require any prior approval of this sort. Thus, there is no merit to the Association's claim that the Legislature intended to exempt school business administrators appointed pursuant to N.J.S.A. 18A:17-14.1 from these restrictions so as to allow them to collect payments for unused sick and vacation leave without limitation.[13]
Finally, the Association contends that these regulations violate N.J.S.A. 18A:6-10. In pertinent part, that statute provides:
No person shall be dismissed or reduced in compensation,
(a) if he is or shall be under tenure of office, position or employment during good behavior and efficiency in the public school system of the state....
There is no dispute that school district business administrators may acquire tenure pursuant to N.J.S.A. 18A:28-5 and are protected by N.J.S.A. 18A:6-10.
Our courts have long recognized, however, that absent constitutional restriction, the Legislature may modify terms and conditions of public service. Spina v. Consol. Police and Firemen's Pension *309 Fund Comm'n, 41 N.J. 391, 400, 197 A.2d 169 (1964); see Alford v. Bd. of Educ. of Buena Reg'l Sch. Dist., 310 N.J.Super. 147, 155, 708 A.2d 439 (App.Div.) (agreeing that in the circumstance of that case "reimbursement for unused sick time is a matter which is not preempted by statute and may be negotiated by the parties as a term and condition of employment"), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998).
In order to preserve public funds for thorough and efficient education by limiting excessive administrative costs, the Legislature has authorized the Commissioner to adopt standards prospectively limiting the award of excessive benefits to school administrators, while preserving the administrators' rights to collect payments for prior unused leave acquired under prior contracts. The tenure law and this regulation prospectively modifying permissible payments for unused leave, which is authorized by statute, can and must be harmonized. See Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 12-17, 951 A.2d 987 (2008). So construed, the tenure law does not prohibit this limitation on benefits, which is authorized by more recent statutes requiring the Commissioner, through application of this regulation by the executive county superintendents, to disapprove contracts that do not comport with proper advancement of this State's constitutional obligation to provide a thorough and efficient education. See, e.g., Alford, supra, 310 N.J.Super. at 154-55, 708 A.2d 439 (applying statute governing the right to payment for accumulated sick leave afforded to tenured teachers who were transferred to a new district upon closure of a school and directing payment required by statute under the terms available in the new district).
The Association's reliance on Caponegro v. State-Operated Sch. Dist. of the City of Newark is misplaced. That case involved payment for leave accumulated in accordance with the employee's contract that was extinguished by the state's takeover of the school district and resulted in termination of the officer's employment. 330 N.J.Super. 148, 150-51, 748 A.2d 1208 (App.Div.2000). In contrast, this statutorily authorized regulation has no impact upon any contractual right to payments for unused leave accumulated under prior contracts. Cf. id. at 154-55, 157, 748 A.2d 1208 (discussing constitutional restrictions on limitation of benefits accrued prior to the event that triggered termination of a contract as a matter of statutory law).
The Association also contends that N.J.A.C. 6A:23A-3.1(e)(8), which requires calculation of a per diem rate of pay for twelve-month employees based on a 260-day work year, is invalid. Quite obviously, the standard is rationally based on a five-day work week for fifty-two weeks. As applied to twelve-month employees, this standard is neither arbitrary nor unreasonable or of the type that requires specific statutory support. Indeed, it is difficult to posit a different measure of per-diem rate for twelve-month employees.
Nevertheless, the Association contends that the 260-day work year conflicts with N.J.S.A. 18A:27-6, which provides for payment of salary in equal "semimonthly or monthly installments" except where "otherwise specified" by contract, and N.J.S.A. 18A:30-6, which defines "a day's salary" as "1/200 of the annual salary" for the limited purpose of authorizing the maximum amount a school district may pay, after deducting the cost of a substitute, to a person who is sick and has exhausted his or her leave. The claims lack sufficient merit to warrant any additional comment. R. 2:11-3(e)(1)(E).[14]

*310 IV
We turn to consider the Association's challenge to the Commissioner's regulation conditioning receipt of state funding for education on adoption of a nepotism policy.
The Association contends that the School Funding Reform Act of 2008(Act), L. 2007, c. 260, does not authorize the Commissioner to condition receipt of funding upon adoption of a nepotism policy. In our view, that power is "reasonably necessary" and "appropriate" to effectuate the Legislature's intent and implicit in the authority expressly delegated. N.J. Guild, supra, 75 N.J. at 562, 384 A.2d 795.
In section 2 of Chapter 260 of the Act, the Legislature declared compliance with accountability measures adopted in Chapters 53 and 63 to be "imperative" to the school funding formula. N.J.S.A. 18A:7F-44(o). A provision addressing a board member's participation in matters involving a member of his or her immediate family is among those a board must include in its "policy" pursuant to section 15 of Chapter 53, N.J.S.A. 18A:11-12(l). Moreover, pursuant to section 18 of Chapter 260, the Commissioner must refrain from "authoriz[ing] disbursement of funds to any district until the commissioner is satisfied that all educational expenditures in the district will be spent effectively and efficiently in order to enable students to achieve the core curriculum content standards," and the Commissioner is authorized "to take any affirmative action as is necessary to ensure the effective and efficient expenditure of funds by school districts and county vocational school districts." N.J.S.A. 18A:7F-60. Finally, as noted above, the Commissioner is expressly authorized to adopt regulations to implement both Chapters 53 and 260.
We recognize that "[w]here there exists reasonable doubt as to whether [regulatory] power is vested in the administrative body, the power is denied." In re Closing of Jamesburg High Sch., 83 N.J. 540, 549, 416 A.2d 896 (1980). But in our view there is no room for a reasonable doubt that a regulation requiring adoption of a nepotism policy is among those measures reasonably necessary to performance of the Commissioner's obligations under N.J.S.A. 18A:7F-60 and not a matter that presents a significant, unresolved question of policy. See Burlington County Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579, 598, 267 A.2d 533 (1970) (noting that "a policy question of that significance lies in the legislative domain and should be resolved there"); Borough of Avalon v. N.J. Dep't of Envtl. Prot., 403 N.J.Super. 590, 607-08, 959 A.2d 1215 (App.Div.2008), certif. denied, 199 N.J. 133, 970 A.2d 1049 (2009).
The Association objects to a specific provision of the nepotism regulation that prohibits hiring of a relative of a school board member or the superintendent of schools. See N.J.A.C. 6A:23A-1.2 (defining "chief administrator" of a local school district by reference to N.J.S.A. 18A:17-15). In pertinent part N.J.A.C. 6A:23A-6.2 provides:
(a) As a condition of receiving State aid, the school district or county vocational school district board shall implement the nepotism policy established by this subsection by October 1, 2008, except that districts previously subject to N.J.A.C. 6A:10 and 6A:10A shall implement such policy on July 1, 2008. The nepotism policy shall include the following:

*311 1. A definition of "relative" that is consistent with N.J.S.A. 52:13D-21.2 and N.J.A.C. 6A:23A-1.2 and a definition of "immediate family member" that is consistent with N.J.S.A. 52:13D-13 and N.J.A.C. 6A:23A-1.2;
2. A provision prohibiting any relative of a school board member or chief school administrator from being employed in an office or position in that district except that a person employed by the district on the effective date of the policy or the date a relative becomes a school board member or chief school administrator shall not be prohibited from continuing to be employed in the district.
The Association contends that a bar against appointment of the relative of a sitting board member or superintendent is in conflict with decisions rendered by the School Ethics Commission permitting board members in the same circumstance to avoid violation of the School Ethics Act, N.J.S.A. 18A:12-21 to -34, by recusing themselves from participating in the appointment of a relative.[15] The Association does not explain why it views that distinction as material to the validity of this regulation.
While well-settled law prohibits courts from upholding regulations when the agency has, under the guise of interpretation, adopted a regulation that conflicts with or gives greater effect to a statute than the Legislature intended, Lourdes Med. Ctr. of Burlington County v. Bd. of Review, 197 N.J. 339, 376, 963 A.2d 289 (2009), there is no material conflict or unauthorized extension here. The School Ethics Act and N.J.S.A. 18A:11-12(l), proscribe action by individual officers under circumstances specified by the Legislature. N.J.S.A. 18A:12-24. Conditioning qualification for funding on adoption of a nepotism policy that precludes appointment of the relative of a current board member or superintendent, who are the highest ranking officials in a local school district, addresses a concern beyond any appearance of impropriety. The potential expenditure of public funds in a manner inconsistent with providing a thorough and efficient education is a concern that is not significantly diminished by recusal of such a high-ranking officer to permit deliberation by that officer's colleagues or subordinates. On that ground, we cannot conclude that this prophylactic regulation is in conflict with the School Ethics Act or beyond the measures reasonably necessary to fulfill the Commissioner's weighty obligation to ensure that public funds are spent "effectively and efficiently" to educate the pupils of school districts.
The Association's claim that its qualified prospective members may suffer the impact of this regulation lacks sufficient merit to warrant comment. R. 2:11-3(e)(1)(E).
The provisions of the Commissioner's regulations challenged by the Association are upheld.
Affirmed.
NOTES
[1] A second appeal challenging N.J.A.C. 6A:23A-3.1 filed by the New Jersey Association of School Administrators, Dr. Terry Van Zoeren, Dr. Simon Bosco, Joseph Abate, Jr., and John Golden (A-2101-08) is pending and not yet calendared.
[2] This is available on the Legislature's website at http://www.njleg.state.nj.us/2006/Bills/ACR/ 3_I1.PDF.
[3] These are available on the Legislature's website at http://www.njleg.state.nj.us/Property TaxSession/specialsessionpt_reports.asp.
[4] The SCI's report is available on its website at http://www.state.nj.us/sci/pdf/SCIHigherEd Report.pdf.
[5] Prior to the enactment of Chapter 92, N.J.S.A. 11A:6-3 prohibited accumulation of more than one-year's vacation leave for employees in political subdivisions that have adopted Title 11A; accordingly, there was no need to address vacation leave for those employees in Chapter 92.
[6] N.J.S.A. 18A:11-13 was adopted effective July 7, 2008 by L. 2008, c. 37, § 6. See also N.J.S.A. 18A:22-8c (authorizing the Commissioner to adopt "such rules and regulations as the commissioner deems necessary to effectuate the budgeting and fiscal procedures under chapter 22 of Title 18A of the New Jersey Statutes").
[7] L. 2007, c. 63 § 58 (as amended effective July 7, 2008 by L. 2008, c. 37, §§ 5, 8).
[8] L. 2007, c. 260, § 83 is codified only as a note following N.J.S.A. 18A:7F-43.
[9] In fact, with one exception, the language of inclusion in both sections is identical to the language of inclusion utilized in N.J.S.A. 40A:9-10.2 and N.J.S.A. 40A:9-10.3, which apply to officers and employees of municipal governments. The only distinction is that the language of inclusion codified in Title 40A refers to guidelines established by the Local Finance Board in the Department of Community Affairs where N.J.S.A. 18A:30-3.5 and N.J.S.A. 18A:30-9 refer to "guidelines or policy that shall be established by the Department of Education."
[10] We note that legislation to clarify the definition has been introduced. Assemb. 3568, 213th Legis. Sess. (2008); S. 2226, 213th Legis. Sess. (2008).
[11] The substantive difference is in the language of exclusion, and that difference is discussed below in footnote 13.
[12] See N.J.S.A. 18A:7-14 (providing that references to "the county superintendent of schools ... shall mean and refer to the office of the executive county superintendent of schools").
[13] We note that the exclusionary clause utilized in the statute defining persons eligible for the defined contribution retirement program is broader in scope, but we express no opinion as to its applicability to business administrators and other administrators. See N.J.S.A. 43:15C-2(a)(3) (excluding a "person otherwise eligible for membership in the Teachers' Pension and Annuity Fund").
[14] In the text of the legal argument included in its brief, the Association contends that a separate provision of this regulation is impermissibly vague. Although the issue was not properly raised, R. 2:6-2(a)(5), we have considered it and conclude that this argument also lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).
[15] The regulation as set forth above is in its current formulation. As initially adopted, it included a restriction on promotion of relatives of these high-ranking officers which has been deleted by amendment. Although the Association asserts that the regulation in its current form precludes promotion of a relative of a board member or a chief administrator, the regulation cannot be read to require that result. And, the Association's objection to the regulation as initially drafted is moot.